IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PECHANGA BAND OF LUISEÑO          )
MISSION INDIANS,                  )
P.O Box 1477                      )
Temecula, CA 92593                )
                                  )
                Plaintiff,        )
                                  )
        v.                        )
                                  )
DIRK KEMPTHORNE,                  )
SECRETARY OF THE INTERIOR         )
U.S. Department of the Interior   )
1849 C Street, N.W.               )
Washington, D.C.  20240           )
                                  )   Case No. 1:06-cv-2206
HENRY M. PAULSON, JR.,            )
SECRETARY OF THE TREASURY         )
U.S. Department of the Treasury   )
1500 Pennsylvania Avenue, N.W.    )
Washington, D.C.  20220           )
                                  )
                                  )
ROSS SWIMMER                      )
SPECIAL TRUSTEE FOR AMERICAN INDIANS )
1849 C Street, N.W.               )
Washington, D.C.  20240           )
                Defendants.       )
_____ )

## FIRST AMENDED COMPLAINT

1.      This is an action by an Indian tribe for an accounting of its trust funds and

declaratory and injunctive relief concerning the Defendants' investment of Plaintiff's trust funds,

and for related relief based on the enumerations that follow.

## PARTIES

2.      Plaintiff, Pechanga Band of Luiseño Mission Indians ("PECHANGA"), is

recognized by the United States as a sovereign Indian tribe with legal rights and responsibilities,

eligible for the special programs and services provided by the United States to Indians because of their status as Indian tribes.

3.     Defendant Dirk Kempthorne is the Secretary of the Interior and charged by law with carrying out the duties and responsibilities of the United States as trustee for PECHANGA.

4.     Defendant Henry M. Paulson, Jr. is the Secretary of the Treasury and in that capacity, is custodian of tribal trust funds with responsibility for the administration of such funds and the preparation and maintenance of records in connection with those funds.

5.     Ross Swimmer is the Special Trustee for American Indians and, in that capacity, is charged, among other things, with the obligation of ensuring that the Bureau of Indian Affairs establishes appropriate policies and procedures, and develops necessary systems that will allow it to maximize, in a manner consistent with statutory restrictions, the return on the investment of all Indian trust fund monies.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1362.  This is a civil action brought by an Indian tribe and arises under the Constitution, treaties and agreements between the United States and PECHANGA, federal common law, and the federal statutes governing the administration and management of property held by the United States in trust for tribes.  The Court also has jurisdiction under 28 U.S.C. § 1361, 5 U.S.C. §§ 702, 706, as this is an action for injunctive relief to compel federal officials to perform a duty owed to the plaintiff.

7.     Venue is properly in this district under 28 U.S.C. § 1391(e) because this is an action in which Defendants are officers and employees of the United States acting in an official

capacity, and a substantial part of the events or omissions giving rise to the claims herein have occurred within this judicial district.

## **ALLEGATIONS**

8.      PECHANGA is a federally recognized Indian tribe organized pursuant to the *Indian Re-organization Act of 1934* (48 Stat. 984; 25 U.S.C. § 461 et seq.)

9.      PECHANGA occupies the Pechanga Indian Reservation in Riverside County, California.

10.      PECHANGA is the beneficial owner of the Reservation's land and natural resources, title to which is held in trust by the United States for the benefit of PECHANGA. PECHANGA's assets include land valuable for agricultural purposes.

11.      Under law, tribal land held in trust by the United States is inalienable except as authorized by Congress. 25 U.S.C. § 177. Congress has granted the Secretary of the Interior authority to approve conveyances of certain interests in trust land, such as leases, easements, and rights of way. The law further establishes the terms and conditions under which such conveyances may be made, and generally requires that compensation be paid to the tribe for the use of tribal lands.

12.      By various Acts of Congress, commencing with statutes adopted more than a century ago, Congress authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depositary institutions for the benefit of the tribes. E.g., Act of March 3, 1883, c. 141, § 1, 22 Stat. 590, codified at 25 U.S.C. § 155. By subsequent statutes, Congress directed that interest be paid on tribal trust funds, and required that such trust funds be invested. See, e.g., Act of February 12,

1929, c. 178, 45 Stat. 1164, <u>codified as amended</u>, 25 U.S.C. § 161b; Act of June 24, 1938, 52 Stat. 1037, <u>codified as amended</u>, 25 U.S.C. § 162a.

13.     Defendants exercised control and management over PECHANGA land held in trust by the United States.  Upon information and belief, the Department of the Interior has approved leases, easements, and grants of other interests in PECHANGA trust land, and has collected income from PECHANGA trust land.  These include funds generated by rents, lease and royalty payments, agricultural leases, and judgments paid to PECHANGA.  Upon information and belief both the Department of the Interior and the Treasury Department are responsible for the deposit and investment of PECHANGA funds.

14.     In 1993 PECHANGA received a one-time payment of $439,420 from the settlement of Indian Claims Commission Docket 80-A-2 ("ICC Fund").  Some of these monies were disbursed in 1994 for attorneys fees and other litigation costs, leaving the ICC Fund with a balance of $345,402.63.  The ICC Fund constitutes PECHANGA trust funds; it has been, and remains, under the control of the Department of the Interior and the Treasury Department ever since its receipt.  No further withdrawals have been made from the ICC Fund.

15.     The United States has assumed the obligations of a trustee with respect to PECHANGA lands and funds.  <u>United States v. Mitchell</u>, 463 U.S. 206, 225 (1983); <u>Cobell v. Norton</u>, 240 F.3d 1081 (D.C. Cir. 2001).  As trustee, the United States has a fiduciary relationship and obligations of the highest responsibility and trust to administer the trust with the greatest skill and care possessed by the trustee.  The United States "'has charged itself with moral obligations of the highest responsibility and trust' in its conduct with Indians, and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" <u>Cobell</u>, 240 F.3d at 1099 (quoting <u>Seminole Nation v. United States</u>, 316 U.S. 286, 297 (1942)).

16.    The trust obligations of the United States include, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved and managed so as to produce a maximum return to the tribal owner consistent with the trust character of the property.

17.    The trust obligations of the United States include, among other duties, the duty: to maintain adequate records with respect to the trust property; to maintain adequate systems and controls to guard against error or dishonesty; to provide regular and accurate accountings to the trust beneficiaries; to refrain from self-dealing or benefiting form the management of the trust property.

18.    Congress has charged the Defendants with fulfilling the obligation of the United States as trustee and with responsibility for the administration and management of all trust property of PECHANGA and/or assets to be used for the benefit of PECHANGA.

19.    Defendants control all the books and records of account relating to trust funds and trust property and/or assets to be used for the benefit of PECHANGA.  Defendants, however, have never rendered a reliable, accurate or complete accounting to PECHANGA for its trust monies, trust assets and/or assets to be used for the benefit of PECHANGA.  Defendants have further failed to establish any effective system or provision for regular or periodic accounting for the trust property and funds.  As a consequence, Defendants have kept and continue to keep PECHANGA, as the trust beneficiary, uninformed as to the trust property it owns, what income the trust property has produced, and what disposition has been made of the income.

20.    As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, among others, there are massive and long-standing problems with the Defendants' administration of

Indian trust funds.  After a series of oversight hearings on Interior's management of Indian trust

funds, Congress issued a report condemning those practices.  See Misplaced Trust, Bureau of

Indian Affairs Mismanagement of the Indian Trust Fund, H.R. Rept. No. 102-499, 102d Cong.

2d Sess. (1992) ("Misplaced Trust").  As Congress found:

> Scores of reports over the years by the Interior Department's
> Inspector General, the U.S. General Accounting Office, the Office
> of Management and Budget, have documented significant, habitual
> problems in BIA's ability to fully and accurately account for trust
> fund moneys, to properly discharge its fiduciary responsibilities,
> and to prudently manage the trust funds [Id. at 2] . . .
>
> The Bureau has repeatedly ignored directives to undertake needed
> management reform measures.  [Id. at 3] . . .
>
> As a result of this dismal history of inaction and incompetence,
> there is no assurance that the Bureau actually desires to, or will,
> make any substantial advancement toward rectifying the basic
> financial management failures brought to their attention.  Despite a
> decade of initiatives, the Bureau's headquarters leadership and
> accountability continue to be woefully inadequate. . . .
>
> It is apparent that top Interior Department officials have utterly
> failed to grasp the human impact of its financial management of
> the Indian trust fund.  The Indian trust fund is more than balance
> sheets and accounting procedures.  These moneys are crucial to the
> daily operations of native American tribes and a source of income
> to tens of thousands of native Americans.  [Id. at 5.]

Congress further found the Defendants' administration of Indian trust funds to be:

> Grossly inadequate in numerous important respects.  The Bureau
> [of Indian Affairs] has failed to accurately account for trust fund
> moneys.  Indeed, it cannot even provide account holders with
> meaningful periodic statements on their balances.  It cannot
> consistently and prudently invest trust funds and pay interest to
> account holders.  It does not have consistent written policies or
> procedures that cover all of its trust fund accounting practices.
> Under the management of the Bureau of Indian Affairs, the Indian
> trust fund is equivalent to a bank that doesn't know how much
> money it has.  [Id. at 56.]

21.     Upon information and belief, Defendants' mismanagement of trust funds has resulted in losses to trust beneficiaries. However, the extent of such losses is unknown to PECHANGA because Defendants have failed to provide PECHANGA with a reliable, accurate or complete accounting of its trust funds, and further have failed to maintain accurate books and records of account, lost and destroyed relevant trust account records, failed or refused to disclose known losses to the trust beneficiaries, and failed or refused to reimburse trust beneficiaries for losses to their trust funds. See Misplaced Trust, H.R. Rept. No. 102-499 at 37-41.

22.     By the Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, Congress imposed two requirements on Defendants: 1) that they audit and reconcile tribal trust funds, and 2) that they provide the tribes with an accounting of such funds. Congress reaffirmed the two mandates of the 1987 Act in subsequent statutes, namely the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990. By these Acts, Congress further required that the Defendants certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

23.     To protect the rights of tribes until accountings of their trust funds could be completed, Congress has provided, in each Interior Department Appropriations Act since 1990 that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of

September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No.

104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act

of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No.

105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of

October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No.

107-63, 115 Stat. 414; Act of February 20, 2003, Pub. L. 108-7, 117 Stat. 1; Act of February 20,

2003, Pub. L. No. 108, 117 Stat. 11;  Act of November 10, 2003, Pub. L. 108-108; Act of

December 8, 2004, Pub. L. 108-447; and the Act of August, 2, 2005, Pub. Law 109-54.

    24.    On October 25, 1994, Congress enacted the American Indian Trust Fund

Management Reform Act ("Trust Reform Act"), codified at 25 U.S.C. §§ 4001-61.  Under this

Act, Congress recognized the United States' pre-existing trust responsibilities, and charged the

Defendants with additional responsibilities to ensure proper discharge of the trust responsibilities

of the United States.  These include the duty to provide periodic, timely accountings of trust

funds to tribal and individual Indian beneficiaries, and the duty to cause an annual audit of all

trust funds to be conducted.  25 U.S.C. § 4011; 25 U.S.C. § 162a (d).

    25.    As evidenced by reports issued by Interior Department Inspector General, the

General Accounting Office, and the Office of Management and Budget, among others,

notwithstanding the foregoing Acts of Congress, Defendants have continued to fail to implement

the reforms required by law.  The Defendants' continued failure to implement reforms required

by Congress and to provide timely and meaningful accountings is now the subject of pending

litigation in federal court, Cobell v. Norton, No. 96-1285 (D.D.C.).  The proceedings in that case,

which are focused on trust accounts of individual Indians, confirm the Government's fiduciary

obligations to all Indian trust beneficiaries and the Government's breach of those obligations by

failing to account. See Cobell v. Babbitt, 91 F. Supp. 2d 1 (D.C.C. 1999), aff'd, 240 F.3d 1081 (D.C. Cir. 2001).

26.    In the early 1990's, the United States Department of the Interior entered into a contract with Arthur Andersen accounting firm under which Arthur Andersen was to provide a reconciliation of certain tribal trust fund accounts.

27.    PECHANGA is in receipt of a report prepared by Arthur Anderson and dated December 31, 1995, which was reportedly delivered to PECHANGA at some point in 1996. The report is entitled "Tribal Trust Funds Reconciliation Project, Agreed-upon Procedures and Findings Report for Pechanga Band." PECHANGA is also in receipt of certain additional documents and materials that Defendant has characterized as additions and supplements to the Arthur Andersen report. PECHANGA requested that the Defendants provide it with the 1996 Arthur Andersen report along with any relevant supplements and work materials. On or about December 12, 2006 Mr. John H. McClanahan, Tribal Trust Accounting Program Manager, mailed two (2) compacts disks (marked "CD1" and "CD2" respectively to PECHANGA. Hereinafter PECHANGA will refer to document marked with "Bates" numbers 831000174765-0001 to -0056 that was included on CD1 as the "Andersen report" or "AA report."

28.    In the AA Report, Arthur Andersen expressly states that the work done does "not constitute an audit made in accordance with generally accepted auditing standards."

29.    The Andersen report was not certified by an independent party as required by the Acts of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; November 5, 1990, Pub. L No 101-512, 104 Stat. 1915, and November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990, described in paragraph 18 above. Similar reports prepared by Arthur Andersen for other tribes have been criticized by the General Accounting Office, among others. See United States General

Accounting Office, Report to Senate Committee on Indian Affairs, BIA's Tribal Trust Fund

Account Reconciliation Results, GAO Report No. B-266127, May 3, 1996.

30.     The Andersen report does not constitute a reliable, accurate or complete

accounting of PECHANGA's trust funds because, among other reasons:  a) the report was not

conducted pursuant to generally accepted accounting principles, but was based on procedures

defined by the Bureau of Indian Affairs, which imposed limitations on the scope of the work and

made changes in methodologies over the course of the project that were not disclosed to

PECHANGA; b) the report was premised on the erroneous assumption that an accounting of

trust funds could be done based on review of information recorded in the Bureau of Indian

Affairs' accounting system, without determining whether all receipts or income due had been

collected and properly recorded by the Bureau, and therefore fails to address the possibility that

materially significant transactions were not recorded by the Bureau or that the information as

recorded by the Bureau was inaccurate or in error; c) the report does not disclose adjustments

that were recommended by Arthur Andersen but which the Bureau of Indian Affairs did not

accept; d) the report fails to address many transactions where accounting records could not be

located.  See United States General Accounting Office, Report to Senate Committee on Indian

Affairs, BIA's Tribal Trust Fund Account Reconciliation Results, GAO Report No. B-266127,

May 3, 1996.

31.     PECHANGA did not accept the AA report as a full and complete accounting, nor

has it accepted the balances of its trust funds, as reflected in the Andersen report.

32.     To date, the Defendants have failed to provide PECHANGA with the legally

required accounting of its trust funds.

33.    The United States, acting through the Department of the Interior and the Department of the Treasury, has a fiduciary duty to invest Indian trust funds so as to maximize the income by prudent investment and the burden of proof to justify less than maximum return. The United States has a corollary duty to keep informed so that when better investment opportunities develop elsewhere, funds can be reinvested.  See Cheyenne-Arapaho Tribes v. United States, 512 F.2d 1390 (Ct. Cl. 1975).

34.    The Trust Reform Act requires the Special Trustee for American Indians to ensure that the Bureau of Indian Affairs ("BIA") establishes appropriate policies and procedures, and develops necessary systems that will allow it:

> (i) properly to account for and invest, as well as maximize, in a manner consistent with the statutory restrictions imposed on the Secretary's investment options, the return on the investment of all trust fund monies, and

> (ii) to prepare accurate and timely reports to account holders (and others, as required) on a periodic basis regarding all collections, disbursements, investments, and return on investments related to their accounts.

25 U.S.C. § 4043(b)(2)(B) (emphasis supplied).

35.    The United States is obliged to conform with general trust standards in managing and investing Indian trust funds.

36.    The United States must seek to maximize the "total return" on the investment of Indian trust fund monies, including capital appreciation and gain as well as trust accounting income.  See Restatement (Third) of Trusts § 227, cmt. e (1992); Uniform Prudent Investor Act (1994).

37.    On information and belief, the United States has not established appropriate policies and procedures, and developed necessary systems, that will allow it to maximize the total return on the Indian trust fund monies that it invests.  Instead, the United States continues to

take an investment approach that results in widespread and ongoing failure to realize capital gains or to limit capital losses because of its strong preference for managing Indian trust funds by simply buying securities and holding them until maturity.

38.     On information and belief, the United States has not established policies, procedures, or systems that are necessary in order to: a) monitor all Indian trust fund portfolios on an ongoing basis to evaluate capital gains and losses, and b) determine on an ongoing basis and in timely fashion whether to change or reposition portfolio holdings so as to maximize total return. The United States has not adopted a meaningful, consistent and realistic "total return" approach to the investment of Indian trust funds nor has it engaged in strategic diversification of trust fund portfolio holdings for the purpose of enhancing total return.

39.     The failure of the United States to employ a "total return" approach to the investment of the ICC Fund already has caused a substantial loss to PECHANGA. PECHANGA has been advised by an expert consultant that the resultant loss is at least $1,000,000 in investment return and perhaps as much as several million dollars, depending on how frequently account holdings would have been sold under a "total return" approach.

40.     The ongoing failure of the United States to employ a realistic and meaningful "total return" approach to the investment of PECHANGA's trust funds will cause additional, substantial loss to PECHANGA so long as it continues.

41.     On information and belief, the United States has not provided Indian trust account holders accurate and timely reports on a regular basis regarding all collections, disbursements, investments, and return on investments related to their accounts. It has not provided reports about what securities are in (or being held for) their accounts, when those securities were purchased and at what price, and whether there is any unrealized gain or loss with respect to

those securities.  Nor did it provide any benchmark information in the reports so that the account holder could compare its rate of return to the rate of return being achieved for other tribes or the rates being obtained by private funds that invest in similar securities.

42.    In 1983 the BIA engaged Price Waterhouse to provide an in-depth review of the United States government's Indian trust fund management practices, including investment practices.  Price Waterhouse suggested that the BIA might consider the creation of an actively managed portfolio for interested Indian tribes if it was prepared to obtain external support from a professional money manager who would continuously monitor the portfolio.  Price Waterhouse also recommended that the BIA engage an outside investment advisor.  Price Waterhouse, Bureau of Indian Affairs, In-Depth Review of Indian Trust Funds, Task III, Investment Portfolio Management (1983).  The BIA took none of these steps.

43.    Price Waterhouse also addressed "Indian Trust Fund Performance Reporting."  It proposed a series of management reports and noted that such reports "serve both as a vehicle for communication [with Indian beneficiaries] and as a management tool to allow for efficient administration of the funds."  Id. at VI-12.  One proposed report was the "Project Maturities Report" which, among other things, would alert management to major swings in the market value of fixed income securities.  Id. at VI-9 to VI-11.  Another proposed report was a "Monthly Summary Report" that would be the primary vehicle for communication with the Indian trust account beneficiaries and would provide information on investment results. Id. at VI-12.  The results were to be presented both in terms of cost and market value, and would show the value at original cost and the value including unrealized gains or losses for each portfolio.  The BIA did not implement any of these reports.

44.    A decade later, in March 1994, with congressional plans afoot to enact the Trust Reform Act, the Department of the Interior approved an initiative to contract for investment advisors and a custodian for the BIA's Office of Trust Fund Management ("OTFM") to address concerns about the Department's ability to maximize returns on Indian trust funds. The Department's plan called for OTFM to contract for theses services by June 30, 1995.

45.    In August 1994, however, Interior officials stated that they had determined that trust fund investments could be better handled under a single investment fund option managed by the Treasury Department -- a government securities investment fund, similar to the federal employee Thrift Savings Plan G Fund. Under this option, Interior officials said that OTFM would not need to contract for investment advisors and a custodian. But this change was not implemented either.

46.    The Office of Trust Funds Management, which is part of the Office of the Special Trustee for American Indians, has established an investment policy regarding the investment of Indian trust funds. This policy has been set forth in various memoranda, the most recent of which was issued on or about June 1, 2000. This policy fails to establish a meaningful, consistent and realistic "total return" approach to the investment of Indian trust funds. Instead, it endorses an approach of simply buying securities and holding them until maturity.

47.    In any event, the Office of Trust Funds Management has not implemented its investment policy in a manner that constitutes a meaningful, consistent and realistic "total return" approach to the investment of Indian trust funds. Its actual investment practices amount to little or nothing more than buying securities and holding them until maturity.

## COUNT I
### Accounting - Declaratory Judgment

48.    PECHANGA realleges and incorporates by reference the allegations contained in paragraphs 1 through 47 above.

49.    Defendants owe PECHANGA a fiduciary duty and obligations of the highest responsibility and trust to administer PECHANGA's trust property with the greatest skill and care possessed by the trustee.

50.    Defendants fiduciary duties include, among others, the duty to provide PECHANGA with a full and complete accounting of PECHANGA's trust funds, trust assets and/or assets to be used for the benefit of PECHANGA.

51.    Defendants have failed to provide PECHANGA with an accounting of PECHANGA's trust funds, trust assets and/or assets to be used for the benefit of PECHANGA and this failure is a breach of Defendants' fiduciary duties to PECHANGA in violation of federal law.

52.    Defendants' failure to fulfill their fiduciary duties to PECHANGA constitutes agency action that has been unlawfully withheld.  Cobell v. Norton, 240 F.3d 1081, 1096 (D.C. Cir. 2001) ("Cobell VI").

53.    PECHANGA is entitled to a declaratory judgment that the Defendants have not provided PECHANGA with a full and complete accounting of PECHANGA's trust funds, trust assets and/or assets to be used for the benefit of PECHANGA as required by law, and that the Anderson report does not constitute an accounting of PECHANGA's trust funds sufficient to commence the running of the statute of limitations on claims concerning losses to or mismanagement of such funds.

## COUNT II

## Injunction Compelling an Accounting

54.     PECHANGA realleges and incorporates by reference the allegations contained in paragraphs 1 through 53 above.

55.     Defendants' continuing failure to provide PECHANGA with complete and accurate accountings of its trust funds, trust assets and/or assets to be used for the benefit of PECHANGA will cause PECHANGA irreparable injury, as records necessary for proper accounting have been, and may continue to be lost or destroyed, depriving PECHANGA of the information essential to determining whether these assets and funds have been properly administered.

56.     PECHANGA is entitled to declaratory and injunctive relief requiring Defendants to provide PECHANGA with a full and complete accounting of all of PECHANGA's trust funds, trust assets and/or assets to be used for the benefit of PECHANGA.

## COUNT III
### Investment Practices – Declaratory Judgment

57.     PECHANGA realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 above.

58.     Defendants owe PECHANGA a fiduciary duty to seek to maximize the "total return" on the investment of PECHANGA's trust fund monies, including capital appreciation and gain as well as trust accounting income, and to establish appropriate policies, procedures, and necessary systems to accomplish this objective.

59.     Defendants have failed to manage and invest PECHANGA's trust fund monies so as to seek to maximize the total return on investment, and have failed to establish appropriate policies, procedures, and necessary systems to accomplish this responsibility, thereby breaching their fiduciary duties to PECHANGA in violation of federal law.

60.    Defendants have failed to provide PECHANGA with accurate and timely reports on a regular basis regarding all collections, disbursements, investments, and return on investments related to PECHANGA's trust accounts, and have failed to establish appropriate policies, procedures, and necessary systems to accomplish this responsibility, thereby breaching their fiduciary duties to PECHANGA in violation of federal law.

61.    Defendants' failure to fulfill their fiduciary duties to PECHANGA constitutes agency action that has been unlawfully withheld.

**62.**    PECHANGA is entitled to a declaratory judgment that the Defendants are in breach of their fiduciary duty by failing to manage and invest PECHANGA's trust fund monies so as to maximize the total return on investment as required by law, and by failing to provide PECHANGA with accurate and timely reports on a regular basis regarding all collections, disbursements, investments, and return on investments related to PECHANGA's trust accounts as required by law.

## COUNT IV
### Investment Practices - Injunction

63.    PECHANGA realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above

64.    PECHANGA is entitled to declaratory and injunctive relief requiring the Defendants to manage and invest PECHANGA's trust fund monies so as to maximize the total return on investment, and to provide PECHANGA with accurate and timely reports on a regular basis regarding all collections, disbursements, investments, and return on investments related to PECHANGA's trust accounts, and to establish appropriate policies, procedures, and necessary systems to accomplish these responsibilities.

**WHEREFORE,** PECHANGA prays for the following relief:

1.      For a declaration that the Defendants have not provided PECHANGA with a full and complete accounting of PECHANGA's trust funds, trust assets and/or assets to be used for the benefit of PECHANGA as required by law;

2.      For an injunction requiring the Defendants to provide a full and complete accounting of PECHANGA's trust funds, trust assets and/or assets to be used for the benefit of PECHANGA;

3.      For a declaration that the Defendants are in breach of their fiduciary duty to maximize the investment return on PECHANGA's trust funds, and to provide PECHANGA with accurate and timely reports on a regular basis regarding all collections, disbursements, investments, and return on investments related to PECHANGA's trust accounts;

4.      For an injunction requiring the Defendants to take the necessary steps to manage and invest PECHANGA's trust funds so as to maximize the total return and to provide PECHANGA with accurate and timely reports on a regular basis regarding all collections, disbursements, investments, and return on investments related to PECHANGA's trust accounts;

5.      For an award of attorneys fees and costs as provided by law; and

6.      For such other relief as may be just and equitable.

Dated:  February 12, 2008

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:  /s/ Steven D. Gordon
Steven D. Gordon
District of Columbia Bar No. 219287
Lynn E. Calkins
District of Columbia Bar No. 445854
Stephen J. McHugh
District of Columbia Bar No. 485148
Holland & Knight L.L.P.
2099 Pennsylvania Ave. NW, Suite 100
Washington, D.C. 20006
202-955-3000 (phone)
202-955-5564 (fax)

*Counsel for Plaintiff  Pechanga Band of
Luiseño Mission Indians*

## CERTIFICATE OF SERVICE

I certify that, on this 12 day of February, 2008 I electronically transmitted the foregoing Complaint to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.


                              /s/Steven D. Gordon
                              Steven D. Gordon


# 4267064_v8