IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | |
| PECHANGA BAND OF | ) |
| LUISEÑO MISSION INDIANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 06-cv-02206-JR |
| | ) |
| DIRK KEMPTHORNE, | ) |
| Secretary of the Interior, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**DEFENDANTS' MOTION TO DISMISS CLAIMS III & IV OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants Dirk Kempthorne, in
his official capacity as Secretary of the Interior, Henry M. Paulson, Jr., in his official capacity as
Secretary of the Treasury, and Ross Swimmer, in his official capacity as Special Trustee for
American Indians, move to dismiss Claims III and IV of Plaintiff Pechanga Band's First
Amended Complaint (Dkt. No. 25). As the true essence of Plaintiff's claims is the recovery of
monetary damages, the United States has not waived sovereign immunity to suit in the district
courts, and this Court therefore lacks subject matter jurisdiction. Additionally, Plaintiff bases its
claims on alleged duties derived from statutes governing the Secretary of the Interior's and
Special Trustee for American Indian's investment management of Tribal trust fund accounts.
Plaintiff has therefore failed to state a claim against the Secretary of the Treasury upon which
relief can be granted and the Secretary of the Treasury should be dismissed from this suit
pursuant to Federal Rule of Civil Procedure 12(b)(6).

In the alternative to dismissal, and pursuant to Federal Rule of Civil Procedure 56(b),

Defendants move for summary judgment as to Claims III and IV.  Plaintiff has failed to identify any statutorily-required discrete and mandatory agency action that Defendants have not already undertaken.  Defendants are therefore entitled to judgment as a matter of law.

In support of this motion, Defendants submit the attached Memorandum In Support of Motion to Dismiss Claims III & IV Or, In The Alternative, For Summary Judgment, and the Administrative Record (see Dkt. Nos. 41, 42).

Respectfully submitted this 15th day of August, 2008,

RONALD J. TENPAS
Assistant Attorney General

By:     _/s/ Kristofor R. Swanson_____

KRISTOFOR R. SWANSON
BARRY WEINER
ANTHONY P. HOANG
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0248
Tel: (202) 305-0469
Tel: (202) 305-0241
Fax: (202) 353-2021
kristofor.swanson@usdoj.gov
barry.weiner@usdoj.gov
anthony.hoang@usdoj.gov

Attorneys for Defendants

OF COUNSEL:

ELISABETH C. BRANDON
JOSHUA EDELSTEIN
United States Department of the Interior

Office of the Solicitor
Washington, D.C.  20240

TERESA E. DAWSON
THOMAS KEARNS
United States Department of the Treasury
Financial Management Service
Office of the Chief Counsel
Washington, D.C.  20227

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2008, Defendants' Motion to Dismiss Claims III & IV Or, In The Alternative, For Summary Judgment, and the memorandum in support thereof, was filed with the United States District Court for the District of Columbia's electronic filing system, to which the following attorneys are registered to be noticed:

Steven D. Gordon
sgordon@hklaw.com

_/s/ Kristofor R. Swanson_
Kristofor R. Swanson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PECHANGA BAND OF                              )
LUISEÑO MISSION INDIANS,                      )
                                              )
      Plaintiff,                          )
                                              )
      v.                                  )    Case No. 06-cv-02206-JR
                                              )
DIRK KEMPTHORNE,                              )
Secretary of the Interior, *et al.*,          )
                                              )
      Defendants.                         )
_____)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CLAIMS III & IV OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

KRISTOFOR R. SWANSON
BARRY WEINER
ANTHONY P. HOANG
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0248
Fax: (202) 353-2021

Attorneys for Defendants

Of Counsel:

PAUL SMYTH
ELISABETH C. BRANDON
JOSHUA EDELSTEIN
United States Department of the Interior

TERESA E. DAWSON
THOMAS KEARNS
United States Department of the Treasury

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    STATUTORY AND REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Subject Matter Jurisdiction and Failure to State a Claim . . . . . . . . . . . . . . . . . . 7

      B.    Judicial Review Under the Administrative Procedure Act . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    TO THE EXTENT THAT PLAINTIFF SEEKS MONETARY DAMAGES, THE
      COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S
      INVESTMENT CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    The APA Does Not Waive Sovereign Immunity for Any Attempts
            to Recover Monetary Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    The APA Does Not Waive Sovereign Immunity for Plaintiff's
            Investment Claims Because the Tucker Act Explicitly and
            Implicitly Forbid Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            1.    The Little Tucker Act Explicitly Forbids Suit in District Courts
                 for Non-Tort Claims Exceeding $10,000 . . . . . . . . . . . . . . . . . . . . . . . . 15

            2.    To The Extent Plaintiff Alleges a Fiduciary Duty to
                 Maximize "Total Return" On Its Investments, The Tucker
                 Act and Indian Tucker Act Implicitly Forbid The Relief Sought . . . . . . 16

II.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEPARTMENT
      OF THE TREASURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.  THE DEPARTMENT OF THE INTERIOR HAS UNDERTAKEN ALL
      REQUIRED, NON-DISCRETIONARY STATUTORY DUTIES REGARDING
      INVESTMENT OF PLAINTIFF'S JUDGEMENT FUND ACCOUNT . . . . . . . . . . . . . . . . . . . . . . 21

      A.    The Department of the Interior's Day-to-Day
            Investment Management Duties are Neither Ministerial
            Nor Non-Discretionary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      B.    The Department of the Interior Has Met All Its Non-
            Discretionary Duties for the Investment of Tribal Trust Funds. . . . . . . . . . . . . 24

            1.    Interior Has Met Its Programmatic Duty to Establish
                  Policies and Procedures.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            2.    Interior Has Met Its Duty to Provide Periodic Account
                  Statements to Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.   PLAINTIFF CANNOT CHALLENGE INTERIOR'S ONGOING PORTFOLIO
      MANAGEMENT UNDER 5 U.S.C. § 706(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# INTRODUCTION

Defendants Dirk Kempthorne, in his official capacity as Secretary of the Interior, Henry M. Paulson, Jr., in his official capacity as Secretary of the Treasury, and Ross Swimmer, in his official capacity as Special Trustee for American Indians, move to dismiss Claims III and IV of Plaintiff Pechanga Band's First Amended Complaint (Dkt. No. 25).[1/] To the extent Plaintiff seeks money damages over $10,000 or for an alleged breach of the Government's fiduciary duty, this Court lacks subject matter jurisdiction. Further, Plaintiff has failed to state a claim against the Secretary of the Treasury for which relief can be granted. Even if this Court maintained jurisdiction over Counts III and IV, however, Plaintiff has failed to identify an unlawfully withheld discrete, mandatory agency action and summary judgment should be granted in favor of the Government.

# BACKGROUND

## I.    STATUTORY AND REGULATORY BACKGROUND

The common law of trusts in the abstract does not create the Government's fiduciary duties toward Indians. *See United States v. Navajo Nation,* 537 U.S. 488, 506 (2003). That job falls to Congress, and applicable statutes and regulations determine the extent of any government fiduciary duty. *See United States v. Mitchell ("Mitchell II")*, 463 U.S. 206, 224–25 (1983); *Cobell v. Norton ("Cobell VI")*, 240 F.3d 1081, 1099 (D.C. Cir. 2001). Likewise, Congress's creation of a trust duty does not necessarily import and impute common law trust duties to the

---

[1/]    On June 16, 2008, Defendants filed a motion to dismiss Counts I and II of the First Amended Complaint. Dkt. No. 35. That motion has been fully briefed, argued, and submitted to the Court. *See* Minute Entry (July 24, 2008). With this motion addressing the remaining claims in the case, *i.e.*, Counts III and IV, Defendants will have sought dismissal, on jurisdictional grounds, of Plaintiff's entire lawsuit.

Government.  *Cobell v. Norton ("Cobell XI")*, 392 F.3d 461, 471 (D.C. Cir. 2004).  Instead, the

common law of trusts is used merely to fill any gaps within the statutory and regulatory duties.

*Cobell VI*, 240 F.3d at 1109; *see also Cobell v. Kempthorne ("Cobell XVIII")*, 455 F.3d 301, 307

(D.C. Cir. 2006) (explaining the common law of trusts is applied to "flesh out" what the statute

mandates for the Government and determine the precise contours of the Government's

responsibility).  Common trust law speaks only where the trust instrument, *i.e.*, the statute and

regulations, does not clearly define the duty it mandates.

Here, Congress has spoken regarding the Department of the Interior's management of

Tribal trust funds.  Specifically, Congress has authorized the Secretary of the Interior to hold

Tribal trust funds outside the U.S. Treasury and invest those funds at market rates through the

purchase of public-debt obligations when he determines it to be in the Tribe's best interest.  25

U.S.C. § 162a(a).  Congress also authorized the Secretary of the Interior to hold Tribal trust

funds in the U.S. Treasury, and to request that the Secretary of the Treasury invest those funds in

public-debt obligations that the Secretary of the Interior has determined are suitable to the needs

of the fund involved.  *See* 25 U.S.C. § 161a(a).  Regulations regarding the Department of the

Interior's investment management of Tribal trust funds are found at 25 C.F.R. Subpart F, §§

115.700 to 115.713, and Subpart G, §§ 115.800 to 115.820.

Generally, when holding funds in the U.S. Treasury pursuant to section 161a(a), the

Secretary of the Interior asks that such funds be invested daily in the Government Account

Series One Day Certificate (sometimes referred to as the "Government Overnighter"), though the

Secretary of the Interior may request other public-debt obligations be used under certain

circumstances.  Congress limited investment under both section 161a(a) and section 162a(a) to

public-debt obligations in order to protect each trust fund's account principal.  *See* House Rep. No. 103-778, 9 (Oct. 3, 1994) *as reprinted in* 1994 U.S.C.C.A.N. 3467, 3468 ("In order to protect these funds, investments must be unconditionally secured through Federal Government deposit insurance.") (legislative history for the 1994 American Indian Trust Fund Reform Act).

In 1994, Congress passed the American Indian Trust Fund Reform Act.  *See* Pub. L. 103-412 (Oct. 25, 1994) (codified at 25 U.S.C. ch. 42).  Among other things, the 1994 Reform Act established the Office of Special Trustee for American Indians ("Special Trustee").  *See* 25 U.S.C. § 4042.  Congress created the Special Trustee to oversee management reforms for Interior's discharge of its trust duties to Indians.  *See* 25 U.S.C. § 4041.  Section 303 of the 1994 Reform Act establishes the Special Trustee's reform functions, including the following:

> INVESTMENTS – The Special Trustee shall ensure that the Bureau establishes appropriate policies and procedures, and develops necessary systems, that will allow it –
>
> > (I) properly to account for and invest, as well as maximize, in a manner consistent with the statutory restrictions imposed on the Secretary's investment options, the return on investment of all trust fund monies; and
> >
> > (ii) to prepare accurate and timely reports to account holders (and others, as required) on a periodic basis regarding all collections, disbursements, investments, and return on investments related to their accounts.

25 U.S.C. § 4043(b)(2)(B).

Similarly, section 102 of the 1994 Reform Act requires the Secretary of the Interior to provide periodic statements of performance to account holders.  *See* 25 U.S.C. § 4011(b).  The statements must include the source, type, and status of the funds; the beginning balance; gains and losses; receipts and disbursement; and the ending balance.  *Id.*  The 1994 Reform Act also codified a Tribe's ability to take over investment of a judgment fund account, recognizing that a

- 3 -

Tribe may be able to achieve higher rates of return without the investment constraints placed on the Department of the Interior.  *See* 25 U.S.C. § 4022; 25 C.F.R. § 115.810; House Rep. No. 103-778 at 13, *as reprinted in* 1994 U.S.C.C.A.N. at 3468.

## II.   FACTUAL BACKGROUND

In September 1993, Plaintiff received a $439,420 settlement, less certain legal expenses (see AR00766 [2/]), from a case that had originated before the Indian Claims Commission.  *See* First Amend. Compl. ¶ 14.   The Department of the Interior ("Interior") deposited Plaintiff's judgment award into a trust fund account ("Judgment Fund Account") in October 1993. AR00762–63.  Once taken into trust, Interior began investing Plaintiff's Judgment Fund Account. *See* AR01206; AR01404.

On March 24, 1994, the Bureau of Indian Affairs (BIA) met with Pechanga representatives to discuss requirements for the use and distribution of the judgment award. AR00809.  The Pechanga General Council originally planned to withdraw the judgment award, invest twenty percent of it, and distribute the remainder for various social and economic development projects.  AR00803–06.  After the BIA's regional and headquarters offices reviewed the Band's use and distribution plan (AR01240; AR01243–45), local BIA officials conducted a public hearing at the Pechanga Tribal Complex on September 14, 1994.  *See* AR00760–87; AR01249; AR01259.  Local and regional BIA officials then recommended that the Band's use and distribution plan be approved.  AR01259–60.  The Deputy Commissioner of Indian Affairs followed those recommendations and the Secretarial Use and Distribution Plan for

---

[2/] The Department of the Interior's Administrative Record is referenced in citation as "AR," followed by the corresponding page number(s).

the Judgment Fund Account became effective on March 9, 1995, and states the following:

> The Band's share will be invested by the Secretary for tribal program and investment purposes until such time as the General Council determines the use of the funds through normal administrative process. The Band's share will be used for activities which may include, but not limited to: land acquisition, fire department, cemetery burial fund, recreation and youth program, Pechanga Creek embankment improvements, a convalescent home for the elderly, tribal administration and operations.

> If at any future date the Pechanga Band presents an investment plan to the Secretary for approval, the Secretary (Secretary of the Interior) shall determine that the investment plan contains and is subject to the requirements for sound investments, responsible accounting and adequate controls, to obtain maximum benefit for the Pechanga Band. Upon the Secretary's approval of the investment plan, the invested funds will be transferred to the Pechanga Band, at a mutually agreed time. All responsibility of the United States for the judgment funds or the investment or use of the funds so transferred shall cease at the time funds are transferred.

> No part of these funds shall be used for a per capita payment distribution.

AR01267–8; *see* 60 Fed. Reg. 31045 (June 12, 1995).

Contemporaneously with Plaintiff's initial plans to use the judgment award, Interior initially held the Judgment Fund Account in short-term investments, making it readily available for withdrawal or distribution. *See, e.g.,* AR00977–81. Interior began expanding the Judgment Fund Account's portfolio by purchasing one-year and two-year securities after the Pechanga Band's Treasurer called in September 1997 to say the Band might soon be ready to withdraw and invest the money on its own, but would not be ready to do so in the immediate future. *See* AR01204; AR01207–8; AR01020–8. The Band, however, never consummated its withdrawal plans and, in the months and years following, Interior further expanded the portfolio by making even longer-term investments. *See, e.g.,* AR01020–8 (Sept. 30, 1998, annual statement); AR01069–83 (Sept. 30, 2000, annual statement). Currently, Plaintiff's Judgment Fund Account

- 5 -

is classified as a long-term investment.  *See* AR01385.  To date, Plaintiff has not withdrawn

funds for either of the uses it had identified in 1994, nor communicated to Interior any further

intention of doing so.

## III.    PROCEDURAL BACKGROUND

Plaintiff filed the present action on December 26, 2006.  *See* Compl. (Dkt. No. 1).

Plaintiff's original Complaint included two counts seeking declaratory and injunctive relief for a

full and complete accounting of funds the Government holds in trust on Plaintiff's behalf.  *See*

Compl. ¶¶ 35, 38.  Plaintiff amended its Complaint on February 12, 2008.  *See* First Amend.

Compl. (Dkt. No. 25).  The Amended Complaint added two additional counts seeking

declaratory and injunctive relief for the Government's alleged failure to seek "total return" on its

investment of Plaintiff's trust funds and provide accurate and timely account reports.  *See* First

Amend. Compl. ¶¶ 62, 64.

Plaintiff argues the Departments of the Interior and the Treasury have "a fiduciary duty to

invest Indian trust funds so as to maximize the income by prudent investment."  First Amend.

Compl. ¶ 33.  Plaintiff further alleges the Government has not established "appropriate policies

and procedures" aimed at maximizing the return of Indian trust fund investments.  First Amend.

Compl. ¶¶ 37, 38.  Plaintiff asserts the Government's alleged policy failures have resulted in a

loss of "at least $1,000,000 in investment return."  First Amend. Compl. ¶ 39.  Plaintiff contends

jurisdiction for its claims exists under 28 U.S.C. §§ 1331, 1361, and 1362, and 5 U.S.C. §§ 702

and 706 to compel agency action unlawfully withheld.  *See* First Amend. Compl. ¶ 6.  Plaintiff

also alleges its claims arise from treaties, federal common law, and federal statutes governing the

management of trust property.  First Amend. Compl. ¶ 6.

On June 16, 2008, the Government filed a motion to dismiss Plaintiff's accounting claims (Counts I and II) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  *See* Defs.' Mot. Dismiss (Dkt. No. 35).  Pursuant to the Court's May 22, 2008, Minute Order, the Government files the current motion to dismiss Plaintiff's investment claims (Counts III and IV).  Pursuant to the same Order, the Government has filed the administrative record concurrently with this motion (Dkt. Nos. 41, 42).[3]

## IV.   STANDARD OF REVIEW

### A.      Subject Matter Jurisdiction and Failure to State a Claim.

In considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), the Court must consider whether Plaintiff's allegations are sufficient to establish jurisdiction over the claim.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Plaintiff carries the burden to establish that the Court has subject matter jurisdiction to hear the case.  *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442-43 (D.C. Cir. 1989).  Because federal courts "possess only that power authorized by Constitution and statute," Plaintiff must identify a statute or Constitutional provision that provides jurisdiction.  *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Moreover, in a suit against the United States, Plaintiff must also identify an applicable waiver of sovereign immunity.  *Mitchell II*, 463 U.S. at 212.  In making determinations on subject matter

---

[3] Despite Plaintiff's claims for declaratory and injunctive relief mandating an alleged agency action unlawfully withheld, the Court's review is still based upon the agency's administrative record.  *See* 5 U.S.C. § 706; *Biodiversity Legal Found. v. Norton*, 180 F. Supp. 2d 7, 10 (D.D.C. 2001).  However, as this Court does not have jurisdiction over Plaintiff's request to require a specific implementation of a discretionary agency function, judicial review of the administrative record is unnecessary.

jurisdiction, the Court may consider matters outside the pleadings. *Lipsman v. Sec'y of the Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003) (citation omitted).

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the complaint's factual allegations as true. *Cummings v. Dep't of the Navy*, 279 F.3d 1051, 1053 (D.C. Cir. 2002) (citation omitted). However, neither inferences unsupported by facts set out in the complaint nor legal conclusions cast in the form of factual allegations are to be considered by the Court. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir 1994). Courts must dismiss the complaint when a plaintiff cannot prove any set of facts that would entitle it to relief. *See Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004); *see also Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation omitted) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

### B.    Judicial Review Under the Administrative Procedure Act.

Plaintiff seeks review under the Administrative Procedure Act (APA) for alleged agency action unlawfully withheld. *See* First Amend. Compl. ¶ 6. Summary judgment is the appropriate mechanism to resolve disputes over administrative actions. *Ackerman v. United States*, 324 F. Supp. 2d 1, 5 (D.D.C. 2004). Under 5 U.S.C. § 706(1), a court can only compel a legally required, discrete, and mandatory agency action otherwise being withheld. *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 61 (2004). Under 5 U.S.C. § 706(2), the Court must determine whether actions that an agency has taken were "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Citizens Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). The APA standard of review is narrow, and courts are not empowered to substitute their judgment for that of the agency. *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). Courts review only whether the agency considered relevant information and articulated a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986) (citation and internal quotation omitted); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir.1993). Thus, judicial review is limited to a determination on whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416 (citations omitted). District courts, as reviewing courts in APA cases, do not act as fact-finders, and judicial review is therefore limited to the administrative record before the agency at the time the decision was made. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

## ARGUMENT

Plaintiff essentially alleges the Department of the Interior has unlawfully withheld the proper structure of its trust fund investment program and therefore failed to properly invest Plaintiff's Judgment Fund Account. But Plaintiff's allegations are without merit.

First, to the extent Plaintiff seeks monetary compensation for alleged investment mismanagement (regardless of whether the requested relief is retrospective or forward-looking), the United States has not waived sovereign immunity in the district courts and this Court lacks subject matter jurisdiction. Further, Plaintiff has failed to state a claim for which relief can be granted against the Secretary of the Treasury. Counts III and IV of Plaintiff's First Amended

- 9 -

Complaint should therefore be dismissed.  Second, even if this Court maintained jurisdiction,

Interior has met or is meeting all of the discrete, non-discretionary statutory duties Congress

required for the investment of Tribal trust funds, including those held in trust for Plaintiff.

Therefore, summary judgment should be awarded in favor of the Government.

I.      **To The Extent That Plaintiff Seeks Money Damages, The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Investment Claims.**

To establish federal court jurisdiction over a suit against the United States, Plaintiff must

identify an applicable waiver of sovereign immunity.  *Mitchell II*, 463 U.S. at 212.   Plaintiff

bases jurisdiction for its investment claims on 28 U.S.C. §§ 1331, 1361, and 1362, and 5 U.S.C.

§§ 702 and 706.  *See* First Amend. Compl. ¶ 6.  Neither section 1331 nor section 1361, however,

waive the United States' sovereign immunity.  *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir.

1996).  Similarly, section 1362 provides no waiver of sovereign immunity.  *See Pueblo of Taos

v. Andrus*, 475 F. Supp. 359, 364 (D.D.C. 1979) (noting that section 1362 was not intended to

waive sovereign immunity for declaratory and injunctive claims).  Thus, the APA provides the

only potential waiver of sovereign immunity for Plaintiff's investment claims.  The APA,

however, conditions its waiver on certain provisions, two of which serve to deprive this Court of

jurisdiction.  First, section 702 waives sovereign immunity only for "relief other than money

damages."  *See* 5 U.S.C. § 702.  Here, Plaintiff has explicitly stated its intent to eventually

recover money.  *See* First Amend. Compl. ¶ 39.  Second, section 702 does not waive sovereign

immunity "if any other statute that grants consent to suit explicitly or implicitly forbids the relief

which is sought."  *Id.*  Here, the Tucker Act, 28 U.S.C. § 1491, the Little Tucker Act, 28 U.S.C.

§ 1346, and the Indian Tucker Act, 28 U.S.C. § 1505, are precisely those types of statutes.

These Acts provide the United States Court of Federal Claims, not the district courts, with

exclusive jurisdiction over both non-tort claims seeking more than $10,000 in damages and

Tribal breach of trust claims alleging that statutes or regulations mandate money damages for a

specifically-pled breach.  As the true thrust of Plaintiff's suit is the eventual recovery of

monetary damages in excess of $10,000, the APA does not waive sovereign immunity and this

Court lacks jurisdiction over Counts III and IV of the First Amended Complaint.

### A.    The APA Does Not Waive Sovereign Immunity for Any Attempts to Recover Monetary Damages.

To the extent Plaintiff seeks declaratory or injunctive relief aimed at the eventual

recovery of money damages, the Government has not waived sovereign immunity for suit in the

district courts.  As pled, Plaintiff's investment claims must rely upon the APA waiver of

sovereign immunity, which is limited to claims "seeking relief other than money damages."  5

U.S.C. §702.  The APA waiver must be "strictly construed, in terms of its scope, in favor of the

sovereign."  *See Dep't of Army v. Blue Fox, Inc.*,  525 U.S. 255, 261 (1999) (citation omitted).

The Supreme Court has emphasized that the prohibition on seeking money damages cannot be

circumvented by artful pleading:

> Almost invariably . . . suits seeking (whether by judgment, injunction, or
> declaration) to compel the defendant to pay a sum of money to the plaintiff are
> suits for 'money damages,' as that phrase has traditionally been applied, since
> they seek no more than compensation for loss resulting from the defendant's
> breach of legal duty.

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen v.*

*Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)); *see also Consol. Edison*

*Co. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (en banc) (stating the court

will not tolerate a party's attempts "to circumvent the jurisdiction of the Court of Federal

Claims") (citations omitted).

- 11 -

The Supreme Court has held that a suit is for "money damages" if it seeks a monetary remedy as "compensation for an injury" or otherwise requests money to "substitute" for a legal duty that the government breached. *Bowen*, 487 U.S. at 893–95.  A district court only retains jurisdiction under section 702 if the payment of money is "specific relief" that "give[s] [the claimant] the very thing to which he was entitled" by the applicable statute in the first instance. *Id*. at 895 (internal quotation and citation omitted).  But the limited "specific relief" exception in *Bowen* does not apply here.  The only Government action required by the investment statutory scheme is the investment of Plaintiff's funds, not payment of some guaranteed monetary return. *Accord Cobell v. Kempthorne ("Cobell XXI")*, No. 96-1285, ___ F. Supp. 2d. ___, 2008 WL 3155157 at *22 (D.D.C. Aug. 7, 2008).[4]  Yet Plaintiff readily admits it will eventually seek money damages from the Government.  In its First Amended Complaint, Plaintiff alleges a loss of "at least $1,000,000 in investment return."  First Amend. Compl. ¶ 39.  In response to a question from the Court regarding Plaintiff's intention to file a suit seeking money damages in the United States Court of Federal Claims (CFC), Plaintiff's counsel stated candidly, "it is our intention to eventually file such a suit."  Trans. of Status Conference at 5:21–23 (May 22, 2008) (attached hereto as Ex. 1).

Plaintiff's attempt to couch its investment claims as solely seeking declaratory and injunctive relief does not bring the claims back under the APA's waiver.  In *Consolidated Edison*, for example, the plaintiff filed suit in district court seeking declaratory and injunctive relief regarding contract payments it had made to the Government.  *Consol. Edison*, 247 F.3d at

---

[4] Unlike *Cobell XXI*, in which this Court found that it had jurisdiction to grant a monetary award in restitution for an accounting that could not be accomplished, monetary relief for Plaintiff's investment claims would be purely compensatory.

1381.  Holding the APA did not provide the necessary waiver of sovereign immunity, the
Federal Circuit reversed the district court's denial of a motion to transfer the case to the CFC.
*Id.* at 1382.  The Federal Circuit explained that a retrospective remedy in the CFC would
effectively grant the plaintiff any prospective relief it had been seeking to avoid future unlawful
action.  *Id.* at 1384 ("In the event of success in the [CFC], Con Ed will receive a refund . . . [and]
the United States could not proceed to assess further EPACT payments without again illegally
exacting funds."); *see also id.* at 1383 (noting 5 U.S.C. § 704 also limits the APA's waiver of
sovereign immunity where an adequate remedy is available elsewhere).

The Fifth Circuit reached a similar result in *Amoco Production Co. v. Hodel*, 815 F.2d
352 (5th Cir. 1987).  There, the plaintiff challenged an agency determination on royalties and
penalties due from a gas production lease.  *Id.* at 353.  The plaintiff sought a declaratory
judgment in the district court to prevent future erroneous agency action, and argued the relief it
sought was unavailable in the CFC.  *Id.* at 358.  The Fifth Circuit reversed the district court's
refusal to dismiss the case for lack of subject matter jurisdiction.  *Id.* at 354.  In so doing, the
Fifth Circuit recognized that "one of the few clearly established principles is that the substance
of the pleadings must prevail over their form."  *Id.* at 361.  A court's primary inquiry is to
"search for the 'essence' of the claim. . . . [and] focus on the type of relief that will result from
the action . . . ."  *Id.* at 362.  Because monetary compensation would naturally result from any
declaratory relief, monetary damages could not be said to be "an 'incidental' effect" in the case.
*Id.* at 362–63; *see also Suburban Mortgage Assocs., Inc. v. HUD*, 480 F.3d 1116, 1126–27 (Fed.
Cir. 2007) (holding that, under 5 U.S.C. § 704, a case cannot proceed in district court where
there is an adequate remedy in the CFC).

- 13 -

Just as in *Consolidated Edison* and *Amoco*, Plaintiff's First Amended Complaint seeks declaratory and injunctive relief. *See* First Amend. Compl. ¶¶ 62, 64. But any declaratory or injunctive relief is unwarranted given Plaintiff's ability to bring similar claims in the CFC, which Plaintiff has readily acknowledged it intends to do. *See* Trans. of Status Conference at 5:21–23. Any retroactive remedy in the CFC would effectively grant Plaintiff the prospective relief it seeks by delineating the legal requirements for future investment of Plaintiff's funds. *See Consol. Edison*, 247 F.3d at 1384. Further, despite styling its action as one for declaratory and injunctive relief, Plaintiff is in essence seeking to obtain the financial benefit that allegedly would have been realized had its Judgment Fund Account been invested at a higher rate of return. *See* First Amend. Compl. ¶ 39; Trans. of Status Conference at 5:21–23. The very nature of Plaintiff's investment mismanagement claims therefore makes money damages the natural result of any declaratory relief. Plaintiff would be hard-pressed to argue that, in the event this Court were to issue the relief Plaintiff seeks, Plaintiff's very next step would not be to seek monetary compensation for alleged mismanagement. Therefore, to the extent Plaintiff seeks declaratory or injunctive relief showing it is owed monetary compensation for alleged improper investment, the Government has not waived sovereign immunity and this Court lacks subject matter jurisdiction.

**B.      APA Does Not Waive Sovereign Immunity For Plaintiff's Investment Claims Because The Tucker Acts Explicitly and Implicitly Forbid Suit**.

In addition to suits seeking monetary damages, the APA also does not waive sovereign immunity "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. For Plaintiff's investment mismanagement claims, the Tucker Acts, 28 U.S.C. §§ 1346, 1491, and 1505, all grant consent to suit in a forum other than federal

district courts and therefore forbid the relief Plaintiff seeks here.

      1.      The Little Tucker Act Explicitly Forbids Suit in District Courts for Non-
Tort Claims Exceeding $10,000.

The Little Tucker Act limits federal district court jurisdiction over suits against the

United States to "civil action[s] or claim[s] . . . not exceeding $10,000 in amount, founded either

upon the Constitution, or any Act of Congress, or any regulation of an executive department, or

upon any express or implied contract with the United States, . . . ."  28 U.S.C. § 1346(a)(2).

Under the statute, non-tort claims exceeding $10,000 are explicitly within the CFC's exclusive

jurisdiction.  *See Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003).  Accordingly, non-tort

claims for more than $10,000 do not fall within the APA's waiver of sovereign immunity and

cannot be heard in district court.

Here, Plaintiff makes non-tort claims in excess of $10,000.  Plaintiff bases its claims on

the Constitution, treaties, and "the federal statutes governing the administration and management

of property held by the United States in trust for tribes."  First Amend. Compl. ¶ 6.  Plaintiff

alleges it is owed in excess of $1,000,000 for the alleged mismanagement of its Judgment Fund

Account.  *See* First Amend. Compl. ¶ 39.  Consequently, to the extent Plaintiff seeks monetary

compensation, its investment claims fall under the CFC's exclusive jurisdiction, and the APA

waiver does not waive sovereign immunity.  *See Cape Fox Corp. v. United States*, 646 F.2d 399,

402 (9th Cir. 1981) (finding district court properly refused to grant declaratory judgment where

it "would have operated only to determine the existence and extent of the damages to which [the

Alaskan native village corporation] was entitled . . .  [and] undermined the exclusive jurisdiction

of the Court of Claims"); *Colo. Dep't of Highways v. U.S. Dep't of Transp.*, 840 F.2d 73, 755

(10th Cir. 1990) ("[A] party cannot avoid the exclusive jurisdiction of the Claims Court under

- 15 -

the Tucker Act by merely artfully pleading injunctive, declaratory, or mandatory relief when the purpose of the suit is to obtain money from the United States of more than $10,000.").

      2.    <u>To The Extent Plaintiff Alleges a Fiduciary Duty to Maximize "Total Return" On Its Investments, The Tucker Act and Indian Tucker Act Implicitly Forbid The Relief Sought.</u>

To the extent Plaintiff's First Amended Complaint alleges that a money-mandating duty to maximize a "total return" on investment derives from the Government's trust duty to Tribes, Plaintiff's claims necessarily arise under the Tucker Act and Indian Tucker Act. The Supreme Court has held in the context of Tribal breach of trust claims that the Tucker Act and Indian Tucker Act provide the jurisdiction and waiver of sovereign immunity needed to hear such claims: "[T]here is simply no question that the Tucker Act provides the United States' consent to suit for claims founded upon statutes or regulations that create substantive rights to money damages." *Mitchell II*, 463 U.S. at 218; *see also Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967) (stating non-contractual claims under 28 U.S.C. § 1491 include "those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury").

Thus, the Tucker Act and Indian Tucker Act implicitly forbid this Court from providing money damages for alleged breaches of trust. In fact, the legislative history of 5 U.S.C. § 702 specifically cites the Tucker Act as an example of a statute that "impliedly forbids" relief under the APA. *See* H.R. Rep. No. 94-1656 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121, 6133. Accordingly, to the extent Plaintiff states a claim for money damages resulting from breach of trust, that claim falls within the scope of the Tucker Acts and the CFC has exclusive jurisdiction. *See Suburban Mortgage*, 480 F.3d at 1116 ("We have cautioned litigants that dressing up a claim

- 16 -

for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an APA case.").[5]

Again, Plaintiff's assertions that it seeks only declaratory and injunctive relief do not work to vest this Court with jurisdiction.  The D.C. Circuit has held that, under the "impliedly forbids" principle noted above, this Court lacks jurisdiction to grant injunctive and declaratory relief even in contract cases where the Tucker Act grants the CFC with jurisdiction over the related monetary claims.  *See, e.g., Albrecht v. Comm. on Employee Benefits*, 357 F.3d 62, 68 (D.C. Cir. 2004) ("[T]he Tucker Act 'impliedly forbids – in APA terms – not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not.'") (quoting *Transohio Sav. Bank v. Dir., OTS*, 967 F.2d 598, 609 (D.C. Cir. 1992)).[6]  Thus, the Tucker Act and Indian Tucker Act "impliedly forbid" all claims premised on contracts—regardless of whether the plaintiff seeks damages, specific performance, quantum meruit relief, or relief under any other theory.

By analogy, the same principle holds true for Tribes seeking declaratory or injunctive

---

[5]  The same result holds if Plaintiff's investment claims are analyzed under 5 U.S.C. § 704, which limits review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."

[6]  *See also Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) ("We know of no case in which a court has asserted jurisdiction [under the APA] either to grant a declaration that the United States was in breach of its contractual obligations or to issue an injunction compelling the United States to fulfill its contractual obligations."); *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1327–29, 1332–33 (Fed. Cir. 2004) (district court lacked jurisdiction to issue a declaratory judgment as to HUD's liability on a contract, even as a predicate for a damages action in the CFC, because the APA does not waive the government's immunity from such a claim); *Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994) ("[W]here contract damages are available in the Court of Federal Claims, the Tucker Act forbids specific performance or declaratory relief under its terms and thus impliedly forbids such relief via the APA").

- 17 -

relief for breach of trust claims.  The Tucker Act covers not only contract claims, but also "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department."  28 U.S.C. § 1491(a).  As discussed above, the Supreme Court has recognized that the Tucker Act, and its companion statute, the Indian Tucker Act, 28 U.S.C. § 1505, encompass money-mandating breach of trust claims arising from the Government's Congressionally-created fiduciary duties.  *See Mitchell II*, 463 U.S. at 218.  Accordingly, just as Congress intended the Tucker Act to serve as the vehicle for litigating breach of contract claims against the government—and thus impliedly forbade any relief on a contract under the APA—Congress likewise intended all breach of trust claims linked to a money-mandating fiduciary duty to proceed under the Tucker Act and Indian Tucker Act, not under the APA.  The Indian breach of trust cases the Supreme Court has addressed in recent years have all originated in the CFC under the Tucker Act and the Indian Tucker Act, thus reinforcing the primacy of that venue.  *See Navajo*, 537 U.S. at 488; *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003)*; Mitchell II*, 463 U.S. at 206.  Indeed, the Supreme Court in *Mitchell II* reviewed the legislative history of the Indian Tucker Act and found that "an important goal of the Act was to ensure that it would 'never again be necessary to pass special Indian jurisdictional acts in order to permit the Indians to secure a court adjudication on any misappropriations of Indian funds . . . .'" 463 U.S. at 214 (quoting 92 Cong. Rec. 5313 (1946) (statement of Rep. Jackson)).

        The APA is a statute designed to provide remedies in cases where alternate remedies are unavailable.  Congress did not intend, however, to create a scheme to circumvent or supplement other jurisdictional statutes and their corresponding limitations.  Plaintiff's proper remedy, to the

extent it seeks eventual recovery of money damages for an alleged breach of trust, lies in the

CFC under the Indian Tucker Act.  This Court therefore lacks subject matter jurisdiction and

Counts III and IV of Plaintiff's First Amended Complaint should be dismissed.

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEPARTMENT OF THE TREASURY.

Count III and IV of Plaintiff's First Amended Complaint also fail to state any investment

claim for which Plaintiff would be entitled to relief from the Department of the Treasury

("Treasury").  Therefore, Plaintiff's investment claims against Treasury should be dismissed.

By naming Treasury as a defendant, Plaintiff claims that Treasury has breached alleged

fiduciary duties (1) to maximize the investment return on Plaintiff's trust funds; and (2) to

provide Plaintiff with "accurate and timely reports on a regular basis regarding all collections,

disbursements, investments, and return on investments" related to its trust funds.  *See* First

Amend. Compl. ¶¶ 58–60.  Plaintiff's requests for declaratory and injunctive relief therefore also

seek to compel Treasury "to take the necessary steps to manage and invest Pechanga's trust

funds so as to maximize the total return and to provide Pechanga with accurate and timely

reports on a regular basis regarding all collections, disbursements, investments, and return on

investments related to Pechanga's trust accounts."  First Amend. Compl., Prayer for Relief  ¶ 4.

Even if all of Plaintiff's factual and legal allegations are taken as true, however—indeed, even if

the Court were to find that the alleged fiduciary duties exist— Plaintiff has provided no grounds

upon which the Court can issue an order granting Plaintiff relief from Treasury.

First, Plaintiff's claims regarding breach of an alleged fiduciary duty to maximize return

must fail against Treasury because, by statute, it is the Department of the Interior that has the

authority to determine how to invest Tribal trust funds.  *See* 25 U.S.C. § 161a(a) (requiring the

Secretary of the Treasury to invest at the request of the Secretary of the Interior); *id.* § 162a(a) (authorizing the Secretary of the Interior to invest tribal trust funds).  Plaintiff's First Amended Complaint fails to identify or allege any other statute or regulation that vests Treasury with investment decision-making authority.  Thus, Plaintiff has failed to state any grounds upon which the Court could issue an order compelling Treasury to maximize the investment returns on Plaintiff's Judgment Fund Account.

Similar reasoning holds to the extent Plaintiff alleges Treasury has failed to provide timely and accurate account reports.  First Amend. Compl., Prayer for Relief ¶ 4.  Timely and accurate account reports are mentioned in both section 102 and section 303 of the 1994 Reform Act.  *See* 25 U.S.C. §§ 4011(b), 4043(b)(2)(B)(ii).  The 1994 Reform Act establishes duties and functions for the Secretary of the Interior and the Special Trustee, not the Department of the Treasury.  *See id.* §§ 4011, 4043(b)(2)(B).  Thus, Plaintiff has failed to state any grounds upon which the Court could issue an order compelling Treasury to create and distribute these reports.[7]

Counts III and IV of Plaintiff's First Amended Complaint fail to show that Plaintiff would be entitled to any relief from the Department of the Treasury for the alleged harms. Plaintiff has therefore failed to state a claim against the Secretary of the Treasury and Counts III and IV, as they apply to the Secretary of the Treasury, should be dismissed.

---

[7] In any event, Treasury does not possess all the information with which to compile the reports because Interior, under its authority, holds Tribal trust funds outside of the Treasury.

III.    **THE DEPARTMENT OF THE INTERIOR HAS UNDERTAKEN ALL REQUIRED, NON-DISCRETIONARY STATUTORY DUTIES REGARDING INVESTMENT OF PLAINTIFF'S JUDGMENT FUND ACCOUNT**.

Even assuming this Court maintains jurisdiction over Plaintiff's investment claims, the claims still fail. Plaintiff seeks declaratory and injunctive relief "requiring the Defendants to manage and invest Pechanga's trust fund monies so as to maximize the total return on investment." First Amend. Compl. ¶¶ 62, 64. As the basis for its investment claims, Plaintiff relies exclusively on 5 U.S.C. § 706(1). *See* First Amend. Compl. ¶ 6; Trans. of Status Conference at 3:17–19. The Supreme Court has stated clearly that only discrete, mandatory duties may be compelled through 5 U.S.C. § 706(1). *SUWA*, 542 U.S. at 61. Plaintiff here has not identified a discrete and mandatory final agency action that the Department of the Interior has failed to take as to the investment of Plaintiff's Judgment Fund Account. Summary judgment should therefore be granted in favor of the Government.[9]

---

[9] Local Civil Rule 7.1(h) provides that each moving party shall accompany a motion for summary judgment with a statement of undisputed material facts. The present case, however, is a challenge under the APA. The APA limits judicial review to the administrative record before the agency at the time of its decision. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985). Even though the initial level of judicial review in APA cases lies in the district court, the district court does not act as fact-finder. *Id.* at 744. Instead, the "[t]ask of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Id.* At 743–44. Therefore, the administrative record presents the facts necessary for a court's review in an APA case, and the submission of contested statements of material facts by the litigating parties is improper. Accordingly, the administrative record constitutes the facts in this case. Here, Defendants filed the Department of the Interior's Administrative Record with the Court on August 15, 2008 (*see* Dkt. Nos. 41, 42), and in order to assist the Court, the Government has cited to relevant portions of the Record that support this motion.

A.     **The Department of the Interior's Day-to-Day Investment Management Duties are Neither Ministerial Nor Non-Discretionary.**

The Supreme Court has emphasized that only very limited types of agency action may be compelled under 5 U.S.C. § 706(1).  *SUWA*, 542 U.S. at 61.  None of those limited types of action exists here.  The statute governing the Special Trustee's responsibility to establish trust fund investment policies does not mandate any particular final agency action regarding the actual investments of trust funds.

*SUWA* is instructive here.  There, the plaintiff sought relief under 5 U.S.C. § 706(1), seeking a declaration that the Bureau of Land Management was in violation of the Federal Land Policy and Management Act's non-impairment mandate, and an injunction ordering compliance. *Id.* at 59-60.  The Tenth Circuit had reversed the district court's determination that it could not grant such relief under the APA.  *See SUWA v. Norton*, 301 F.3d 1217 (10th Cir. 2002), *rev'd*, 542 U.S. 55 (2004).  The Supreme Court, however, unanimously rejected the Tenth Circuit's construction of the APA.  First, the Court examined 5 U.S.C. § 702, which limits judicial review to suits challenging "agency action," as defined in 5 U.S.C. § 551(13).  *SUWA*, 542 U.S. at 62. The Court emphasized that all of the specific categories of "agency action" described in section 551(13) "involve circumscribed, discrete agency actions."  *Id.*  The Court concluded that FLPMA's non-impairment mandate was not an "agency action," as defined in the APA, but rather was a continuing, day-to-day administration of wilderness study areas.  *Id*. at 67.  Such ongoing management activities are not "discrete agency actions" and therefore cannot be challenged under the APA.  *Id.*

Second, and of equal importance to Plaintiff's investment claims, the Supreme Court held that section 706(1) of the APA did not permit a court to award relief under FLPMA's non-

impairment mandate because only "*discrete* agency action that [an agency] is *required to take*" may be compelled under section 706(1).  *Id.* at 64 (emphasis in original).  Stated differently, "the only agency action that can be compelled under the APA is action legally *required*."  *Id.* at 63 (emphasis in original).  Since nothing in FLPMA's non-impairment mandate specifies any particular "legally required" action, the district court was without power under the APA to compel the agency to act.  *Id.* at 65-66.  Although FLPMA's non-impairment mandate "is mandatory as to the object to be achieved . . . it leaves BLM a great deal of discretion in deciding how to achieve it."  *Id.* at 66.

A plaintiff cannot invoke 5 U.S.C. § 706(1) to compel a specific action within a broader mandate otherwise left to the agency's discretion.  Section 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act" that is otherwise being withheld.  *Id.* at 64 (quoting Attorney General's Manual on the Administrative Procedures Act 108 (1947)) (internal quotations omitted).  Here, nothing in the Secretary's investment authority, nor the Special Trustee's statutory functions, mandates the manner in which a particular fund is to be invested, other than the requirement to invest in public-debt obligations.  *See* 25 U.S.C. §§ 161a(a), 162a(a), 4043(b)(2)(B).  While section 303 of the 1994 Reform Act uses the term "maximize," it does so only in the context of directing the Special Trustee to work to achieve an undefined objective of maximization.[9]  *See* 25 U.S.C. § 4043(b)(2)(B).  Instead of directing the Special Trustee simply to "maximize" returns on Tribal trust investments, the statute requires the Special Trustee "establish appropriate policies and procedures and develop necessary systems"

---

[9] Interior's implementation of section 303's directive to develop policies and procedures is discussed below in Section III.B.1.

- 23 -

that will allow Interior to properly invest Tribal trust funds and maximize returns within the "statutory restrictions imposed on the Secretary's investment authority." *Id.* Those restrictions include the limitations Congress placed on available investment instruments in order to protect trust fund account principal. *See* 25 U.S.C. §§ 161a(a), 162a(a); House Rep. No. 103-778 at 9, *as reprinted in* 1994 U.S.C.C.A.N. at 3468. In this manner, section 303's directive is strikingly similar to the one at issue in *SUWA*, which imposed only a programmatic directive on the Secretary to "manage such lands according to his authority under this Act and other applicable law in a manner so as not to impair the suitability of such areas for preservation as wilderness." 43 U.S.C. § 1782(c).

The investment duties Congress has set forth necessarily require the exercise of judgment and discretion. Other than the limitations on specific investment instruments put forth in sections 161a(a) and 162a(a), Congress has neither articulated specific investment policies, nor established investment procedures that Interior must follow in order to ensure proper investment. *See* 25 U.S.C. § 4043(b)(2)(B). Accordingly, Interior's portfolio management is inherently not the type of ministerial, non-discretionary action that be judicially ordered under 5 U.S.C. § 706(1).

### B.     The Department of the Interior Has Met All of Its Non-Discretionary Duties for the Investment of Tribal Trust Funds.

While Congress has not provided specific investment direction, it has specified three discrete duties regarding the investment of Tribal trust fund monies. First, the Government can only invest trust fund monies in public-debt obligations. 25 U.S.C. §§ 161a(a), 162a(a). Second, Interior must develop policies and procedures allowing for that investment and the preparation of timely reports to account holders. 25 U.S.C. § 4043(b)(2)(B). And, third, Interior must

periodically distribute those reports to account holders.  25 U.S.C. § 4011(b).  Here, Plaintiff

alleges Interior has failed to develop the appropriate policies and procedures for fund investment

and provide Plaintiff with accurate and timely reports.  First Amend. Compl. ¶¶ 59, 60.  Contrary

to Plaintiff's contentions, however, Interior has met both of these duties.

        1.     <u>Interior Has Met Its Programmatic Duty to Establish Policies and Procedures.</u>

First, the Department of the Interior has had investment policies in place for at least forty

years, with the current policy finalized in 1996 and most recently amended in 2005.  *See, e.g.,*

AR00324–37; AR00339–52; AR00354–67; AR00370–80; AR00490–96.  The Special Trustee

has also created Desk Operating Procedures for implementing the investment policy.  *See*

AR00057–128 (tribal presentations, portfolio review, and binder maintenance); AR00179–222

(investment analysis and purchase).  The OST investment policy identifies the agency's primary

investment function as providing "maximum income for the tribes while conforming to

prescribed statutory limitations and prudent fiduciary investment principles."  AR00494.  In

implementing that function, investment portfolios are "structured to achieve at least a market-

average rate of return throughout economic cycles, taking into account the specific tribe's risk

constraints and the cash flow requirements dictated by its use and distribution plans and/or

budget forecasts."  AR00491.  The rate of return is ensured by holding, absent certain

exceptions, securities until their maturity date.  AR00494.

     In determining the specific maturity dates for investment, a Tribe's cash flow needs and

income objectives are identified through a Tribe's use and distribution plan for a given fund and

OST's communications with Tribal leaders.  AR00195; AR00491.  Within those liquidity and

income restraints, portfolios are designed to increase potential return and simultaneously reduce

exposure to market reinvestment risk.  AR00199; AR00491.  The balance between return and

risk reduction is addressed by "laddering" the maturity dates of securities within a portfolio.

AR00199.  Successful laddering involves mixing short, intermediate, and long-term maturity

dates, with consideration of a portfolio's current fund allocation.  AR00199–200.  Once

purchased, securities are only sold prior to maturity in order to take advantage of market changes

or to meet a Tribe's liquidity needs.  AR00209.

Further, as an oversight mechanism, OST has established a Portfolio Review Committee.

AR00323.  The Review Committee is responsible for reviewing the portfolios of all accounts

exceeding $100,000.  AR00497.  The Review Committee is comprised of the Principal Deputy

Special Trustee, the Deputy Special Trustee for Trust Services, the Deputy Special Trustee for

Trust Accountability, the Director of the Office of Trust Funds Management, the Director of the

Office of Trust Reporting and Reconciliation, and the appropriate Regional Trust Administrator.

AR00497.  The Chief for the Division of Trust Funds Investments chairs the Review Committee.

AR00497.  The Fiduciary Trust Officer and other appropriate staff also attend the Review

Committee's meetings.  AR00497.  Investment officers are required to comply with the

investment objectives developed and adopted as part of the Review Committee's portfolio

reviews.  AR00182.  By establishing an investment policy, desk operating procedures to

implement the policy, and a Review Committee to, among other things, oversee compliance with

the policy, Interior has met its duties under 25 U.S.C. § 4043(b)(2)(B)(I).

> 2.    <u>Interior Has Met Its Duty to Provide Periodic Account Statements to
> Plaintiff.</u>

Second, Plaintiff's allegations that Interior has failed to provide timely reports on

"collections, disbursements, investments, and return on investment" (First Amend. Compl. ¶¶ 62,

64) are also without merit.  Interior sends monthly and annual account statements to Plaintiff.

AR01045–197 (annual statements); AR01521–2292 (monthly statements).  Section 102 of the

Reform Act also requires that the periodic statements include the source, type, and status of the

funds; the beginning balance; gains and losses; receipts and disbursement; and the ending

balance.  *See* 25 U.S.C. § 4011(b)(1)–(5).  In meeting those requirements, the monthly

statements state the source, type, and status of the Judgment Fund Account.  *See, e.g.,*

AR02024–31 (June 30, 2005, monthly statement).  The statements show each month's beginning

and ending balance with a detailed transaction list, which includes total receipts and

disbursements.  *See, e.g.,* AR02029–31.  The statements also list unrealized gains and losses are

with an asset summary and a list of assets.  *See, e.g.,* AR02025–27.  Additionally, the statements

go beyond the statutory duties by showing a bond maturity schedule.  *See, e.g.,* AR02028.  And

the transaction list shows the investment income received over the proceeding month.  *See, e.g.,*

AR02030.  The Department of the Interior has therefore met its statutory obligation to provide

periodic statements of performance to Plaintiff.

By investing Plaintiff's Judgment Fund Account in statutory-limited investment

instruments, creating policies and procedures for that investment, and providing monthly account

statements to Plaintiff, Interior has undertaken all required non-discretionary actions for

investment of Plaintiff's Judgment Fund Account.  Therefore, the Court should grant summary

judgment in favor of the Government.

## IV.    PLAINTIFF CANNOT CHALLENGE INTERIOR'S ONGOING PORTFOLIO MANAGEMENT UNDER 5 U.S.C. § 706(2).

Though Plaintiff only seeks relief for alleged agency action unlawfully withheld, the

APA also allows for judicial review of final agency action.  *See* 5 U.S.C. §§ 704, 706(2).

Plaintiff can find no relief under section 706(2), however, because Plaintiff cannot challenge the Interior Department's continuing program of investment portfolio management.

The presence of "'final agency action' within the meaning of the APA [is a] threshold question[ ]."  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006).  If the requirement is not met, "the action is not reviewable."  *Id.* (citation omitted).  Thus, to adequately state a claim under 5 U.S.C. § 706(2), a plaintiff "must direct its attack against some particular 'agency action' that causes it harm."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

Plaintiff's First Amended Complaint here, however, though long on allegations about the Government's programmatic failures, has failed to target any specific "agency action" for review.  Absent identification of any final agency action, Plaintiff's First Amended Complaint amounts to a broad programmatic attack on the Department of the Interior's management of Tribal trust funds.  While the APA's list of reviewable "agency actions" is expansive,[10] the D.C. Circuit has "long recognized that the term is not so all-encompassing as to authorize [the court] to exercise judicial review over everything done by an administrative agency."  *Fund for Animals*, 460 F.3d at 19 (citation and internal quotation omitted); *see also Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004).  Instead, the long-standing rule in the D.C. Circuit is "to require the complaining party to challenge the specific implementation of the broader agency policy."  *Fund for Animals*, 460 F.3d at 22.  Here, Plaintiff only makes a broad policy challenge to Interior's day-to-day management and investment of Tribal trust funds,

---

[10] 5 U.S.C. § 551(13) defines "agency action" as an agency rule, order, license, sanction, or relief.  *See SUWA*, 542 U.S. at 64–65. Interior's day-to-day management and investment of Tribal trust funds fall under none of those categories.

which cannot be reviewed under 5 U.S.C. § 706(2).[11]  *See SUWA*, 542 U.S. at 64–65; *Lujan*, 497 U.S. at 891.

## CONCLUSION

To the extent Plaintiff seeks eventual money damages for the alleged mismanagement of its Judgment Fund Account, the Government has not waived sovereign immunity in the district courts, and this Court lacks subject matter jurisdiction.  Additionally, Plaintiff has failed to identify a discrete, mandatory agency action that has been unlawfully withheld, or a final agency action upon which this Court can base its review.  Accordingly, the Court should dismiss Counts III and IV of Plaintiff's First Amended Complaint, or grant summary judgment granted in favor of the Government.


Respectfully submitted this 15th day of August, 2008,

> RONALD J. TENPAS
> Assistant Attorney General
>
> By:    */s/ Kristofor R. Swanson*
>
> KRISTOFOR R. SWANSON
> BARRY WEINER
> ANTHONY P. HOANG
> United States Department of Justice
> Environment & Natural Resources Division
> Natural Resources Section
> P.O. Box 663
> Washington, D.C.  20044-0663
> Tel: (202) 305-0248

---

[11] In the event the Court finds Plaintiff has made a legally cognizable challenge to the Department of the Interior's actual investment decisions for Plaintiff's Judgment Fund Account, however, the Government reserves the right to assert any and all defenses, including jurisdictional defenses, to that challenge.

- 29 -

Tel: (202) 305-0469
Tel: (202) 305-0241
Fax: (202) 353-2021
kristofor.swanson@usdoj.gov
barry.weiner@usdoj.gov
anthony.hoang@usdoj.gov

Attorneys for Defendants

OF COUNSEL:

ELISABETH C. BRANDON
JOSHUA EDELSTEIN
United States Department of the Interior
Office of the Solicitor
Washington, D.C.  20240

TERESA E. DAWSON
THOMAS KEARNS
United States Department of the Treasury
Financial Management Service
Office of the Chief Counsel
Washington, D.C.  20227

Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PECHANGA BAND OF LUISENO          :      Civil Action No. 06-2206
MISSION INDIANS,                  :
                                  :
              Plaintiff           :
                                  :
v.                                :      May 22, 2008
                                  :
                                  :
DIRK KEMPTHORNE, et al.,          :      11:00 a.m.
                                  :
              Defendants          :
. . . . . . . . . . . . . . . :  . . . . . . . . . . . . .

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          STEVEN D. GORDON, ESQUIRE
                            STEPHEN J. McHUGH, ESQUIRE
                            HOLLAND & KNIGHT LLP
                            2099 Pennsylvania Avenue, NW
                            Suite 100
                            Washington, DC 20006-6801
                            (202) 457-7038


For the Defendant:          KRISTOFOR SWANSON, ESQUIRE
                            ANTHONY P. HOANG, ESQUIRE
                            BARRY WEINER, ESQUIRE
                            United States Department
                                of Justice
                            P.O. Box 663
                            Washington, DC 20044-0663
                            (202) 305-0241


Court Reporter:             REBECCA STONESTREET, RPR, CRR
                            Official Court Reporter
                            Room 6511, U.S. Courthouse
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

PDF created with pdfFactory trial version www.pdffactory.com

Exhibit 1

**P R O C E E D I N G S**

1

2       COURTROOM DEPUTY:  This is Civil Action 06-2206,

3    Pechanga Band of Luiseno Mission Indians versus Dirk Kempthorne,

4    et al.  For the plaintiffs we have Steven Gordon and

5    Stephen McHugh; for the defendants we have Anthony Hoang, Barry

6    Weiner, Kristofor Swanson, and Josh Edelstein.

7       THE COURT:  The plaintiffs asked for a status

8    conference in this case, and my understanding of why we're here

9    is because the plaintiffs have filed counts of the amended

10   complaint which would distinguish this case from most of the

11   other tribal cases that are before me, because the plaintiffs

12   have added declaratory judgment counts asserting that the

13   defendants are in breach by failing to manage and invest so as

14   to maximize the total return.

15      The management and investment issues in Cobell, which

16   has been more or less the lodestar of all of these cases, were

17   run to the sidelines a long time ago, and have not been part of

18   the active litigation of the Cobell case.  And I'm not quite

19   sure exactly what the plaintiff has in mind here, or how we

20   should proceed with these two additional counts.

21      So I think maybe I should hear first from Mr. Gordon,

22   and then let's hear what the government has to say about it.

23       MR. GORDON:  Good morning, Your Honor.

24       THE COURT:  Good morning.

25       MR. GORDON:  I believe the Court has accurately

PDF created with pdfFactory trial version www.pdffactory.com

3

# Exhibit 1

1    summarized what we have.  We basically have two distinct matters

2    in the same case, and our focus here today is on the new counts,

3    counts three and four, that were added when we filed the amended

4    complaint in February.

5            So far as we know, this is the first case to raise this

6    issue about the government's failure to pursue total return

7    investing, and this is an issue, as the Court has noted, that is

8    completely distinct from the basic Cobell type accounting issues

9    that the Court has been wrestling with.  And those issues, of

10   course, are going to take a fair amount of time to resolve,

11   under the best of circumstances.

12           This is a very discrete issue.  This is not an issue

13   that should take years to resolve, this is an issue that we

14   believe can fairly be resolved in months.  We think that because

15   of the nature of the case, where we are challenging the policies

16   and practices of the government and basically their failure to

17   employ a total return approach, that this is agency action

18   withheld under the construct of the Administrative Procedure

19   Act.

20           And we don't believe that this is a case that therefore

21   can be resolved on the basis simply of some sort of

22   administrative record that the government puts together.  The

23   government, of course, is free to file an administrative record,

24   and I think it will be the case that there will be documents in

25   terms of the government's investment policies and procedures

PDF created with pdfFactory trial version www.pdffactory.com

4

## Exhibit 1

1    that are highly relevant and that will largely inform the

2    Court's resolution.

3         But we believe that in order to accurately and properly

4    prepare this case for the Court and for a resolution, we'll need

5    some discovery, and that we anticipate that ultimately that the

6    Court would probably want to conduct a hearing or a minitrial of

7    some sort, along perhaps the lines of what it did in Cobell, so

8    that it can be confident that it has its arms around exactly

9    what the government is doing, what our complaint about it is,

10   and therefore the Court can make an informed ruling about

11   whether that complies with the government's obligations.

12        So in terms of what we would like today, we would like

13   basically to set a discovery schedule so that we can move the

14   case along, Your Honor.

15        THE COURT:  What kind of discovery do you want?  I

16   mean, your theory is they've doubled the money in 15 years, they

17   should have expanded it by a factor of 10 or 12 or something

18   like that, but what discovery do you need?

19        MR. GORDON:  Well, Your Honor, we need to have the

20   documents, all of the policy documents about what their current

21   investment policy is.  We have certain documents, we alleged

22   those in the complaints; in their answer the government said,

23   well, that's not all.  There's more.  We asked for that by

24   letter two months ago.  The government has not yet produced it.

25        THE COURT:  You might have gotten it faster using FOIA.

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 1

1          MR. GORDON:  Perhaps, Your Honor.  But beyond what

2     their policy is, in order to get at what their practices are,

3     their day-to-day practices are, we think we're going to need to

4     take a couple of depositions.  I don't think we're going to need

5     to take a bunch of depositions, but if they produce the

6     knowledgeable people, we could have some depositions that will

7     establish the baseline of what their day-to-day practices are in

8     terms of how they invest and in terms of how they implement the

9     policies that they have on paper.

10          And that's the sort of discovery we think we need in

11     this case, is to get the documents, to have several depositions,

12     and then to tee this up for the Court.

13          THE COURT:  Now, you're involved in a difficult

14     two-court straddle here, Mr. Gordon.  You have the Court of

15     Federal Claims; your theory is that you get a declaration here

16     and damages over there and so forth.  I'm sure I'm going to hear

17     from the government about some jurisdictional issues here, but

18     what's your overall view of the jurisdictional posture?

19          MR. GORDON:  I'm happy to address that, Your Honor.

20          First of all, our client, the Pechanga Band, has not

21     filed as of yet any suit in the Court of Federal Claims.  Let me

22     be perfectly candid, though, that it is our intention eventually

23     to file such a suit.

24          So I don't want to be -- I don't want to be cute about

25     that, but as the Court well knows, the Court of Federal Claims

PDF created with pdfFactory trial version www.pdffactory.com

6

# Exhibit 1

1  has a limited jurisdiction and has the ability to grant us

2  damages, but it does not have the equitable powers that this

3  Court has.

4       And the problem is not simply that for the past almost

5  15 years that the tribe's judgment fund has been inadequately

6  invested, it's a matter that it's still being inadequately

7  invested as we appear here today, and will be for the

8  foreseeable future, unless and until the government makes a

9  fundamental change in how it approaches its investment

10  responsibility for Indian tribes.

11       And in order to address that on a forward-looking

12  basis, you know, I can't go into the Court of Federal Claims and

13  get any relief on that.  They'll say, we'll be happy to talk

14  about damages for the last 15 years, and then if you've got more

15  damages, I suppose we could keep coming back to them every

16  often.  But that's obviously a very inefficient way of

17  approaching it.

18       THE COURT:  You don't think the government would have

19  an appropriate Pavlovian reaction if they got a damage award?

20       MR. GORDON:  Your Honor, I'm not confident of that.

21  But the other problem is this:  In order to litigate in the

22  Court of Federal Claims, when you start going back a number of

23  years -- and the time frame here is actually not bad in terms of

24  Indian breach of trust cases.  I've got others that go back 30,

25  40, 50 years.  But in order to push those through in the Court

PDF created with pdfFactory trial version www.pdffactory.com

7

# Exhibit 1

1    of Federal Claims, it's going to take quite a bit of time.  And

2    then obviously the government can appeal, and meanwhile, nothing

3    is happening in terms of them stepping up to the plate and doing

4    total return investing.

5          The government has systematically engaged for

6    30 years -- I mean, the only way the government has known how to

7    invest funds for Indians is to make an investment and sit there

8    and clip the coupons, and when the investment matures, they roll

9    it over.  They have never, so far as we know, based on all of

10    the study we've done, employed a total return approach.  They've

11    been given advice about doing that back in the 1980's.  I think

12    we put that into the complaint.  They had Price Waterhouse come

13    in, and it made some suggestions that were never implemented.

14          So this is not, if you will --

15          THE COURT:  Talk to me about this total return

16    approach.  I mean, the government does not operate like your

17    investment advisor does in anything it does.  If it did, we

18    wouldn't have a national deficit, I don't think.

19          What is your real bottom line here, that they ought to

20    be outsourcing this to Lehman Brothers or something?

21          MR. GORDON:  Well, Your Honor, how exactly they carry

22    that out at some point is not for me to say, or I suppose

23    there's a limit even for the Court.  The Court has addressed

24    that issue I think in Cobell, to some extent.  I mean, there are

25    certain parameters that the Court sets, and then it's going to

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 1

1  be up to the government to decide exactly how it does it.

2         I understand full well that the Court is not going to

3  give detailed instructions about how the government should

4  engage in total return investing.

5         THE COURT:  Well, what do you think?  I mean, should

6  they be doing it the way the President wants the Social Security

7  Administration to be done, give the tribe the ability to direct

8  their own investment, like an IRA or something?

9         MR. GORDON:  Well, that was one of the suggestions

10  Price Waterhouse made back in the '80s, was that basically they

11  ought to set up three different funds, sort of a short-term,

12  medium term, and long-term funds, give the tribes a choice of

13  how they would like their funds invested, and proceed from

14  there.

15         Price Waterhouse also suggested that in terms of

16  dealing with the market, because now we're talking about market

17  fluctuations during the course of an investment, they would need

18  to get some professional advice.  And Price Waterhouse didn't

19  suggest that that would be done in-house, that the Bureau of

20  Indian Affairs would somehow make itself a Wall Street giant,

21  they suggested that that be outsourced and that they get some

22  advice.

23         And in fact, the BIA proposed at one point, in fact,

24  they let a contract that I believe went to Security Pacific

25  Bank - this was in the late '80s - where Security Pacific Bank

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 1

1    was going to assist on investing the tribal trust funds.  That

2    didn't come to fruition.

3         And the story on that, to make a long story short, was

4    Congress said, you know, before you start outsourcing -- this

5    was obviously during the Reagan Administration that believed in

6    privatizing a lot of things.  Congress stepped in and said, you

7    know, before you start outsourcing some of this, the tribes need

8    an accounting to make sure that the funds that they've got are

9    everything they should have.

10        And so the focus shifted to accounting, and it wasn't

11   too long before Ms. Cobell came along, and you've had, this

12   Court knows better than I, what's happened since.

13        But meanwhile, in 1994 you have the Trust Fund Reform

14   Act that's passed by Congress, which actually predates Cobell,

15   and Congress said specifically by statute that the way that the

16   Department of the Interior and the Bureau of Indian Affairs

17   manages trust fund monies needs to be designed to maximize

18   return.

19        And two years earlier, in 1992, the restatement of

20   trusts, which is the black letter law in the area, had made the

21   point that trustees have to pay attention to total return in

22   terms of fulfilling their fiduciary duty.  It's not simply

23   sufficient to look to income, you've got to look to total

24   return.

25        That's been simply ignored or given lip service, in our

PDF created with pdfFactory trial version www.pdffactory.com

—10

# Exhibit 1

1    view, by the government, and we think that that's what some

2    discovery will show.  It's not a big secret.  Once you establish

3    what the policies are and what the actual practices are, it's

4    going to be pretty glaring, we think.

5         And then the Court will have the decision about does

6    this comply, does this fulfill the government's fiduciary

7    obligation.  And if it doesn't, then I assume the Court will

8    say, you know, you've got to come up with a way to implement

9    total return investment.

10        And you have various options, and it's not for the

11   Court to micromanage, but it is for the Court to say that you

12   have to do it one way or another.  That's our view of the case,

13   Your Honor.

14        THE COURT:  All right.  Thank you, Mr. Gordon.  Who's

15   up for the government?

16        MR. SWANSON:  Christopher Swanson, Your Honor, for the

17   United States.

18        A few comments.  First regarding the administrative

19   record, it is our position that this is a case filed under the

20   APA, and should therefore be judged on administrative record.

21   The complaint is phrased in terms of withholding an agency

22   action, but I find that a little odd because Interior here is

23   investing the tribe's money; the complaint is more that they're

24   investing it incorrectly.  In my mind, that's a traditional APA

25   type of case with a record that would include those investments

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 1

1    and the policies that are behind them.

2         You are correct in that we are contemplating motions to

3    dismiss on all the tribes' claims.  Those first two are ones

4    that more closely align with the other tribes that are currently

5    being briefed for motions to dismiss, but we are also

6    contemplating motions to dismiss on jurisdictional grounds for

7    these latter two claims as well.

8         THE COURT:  Well, what does "contemplate" mean?  How

9    long are you going to contemplate them before you file them?

10        MR. SWANSON:  Well, we were actually hoping that some

11   of that scheduling might be taken care of today, Your Honor.

12   And it might be up to your preference of whether that is

13   something, given that this is the only tribe that has --

14        THE COURT:  I think it's a separate issue from the

15   issue that I've invited these omnibus motions on.

16        MR. SWANSON:  That was our impression as well,

17   Your Honor.

18        THE COURT:  And it's separate and it's rather

19   distinctive, I think, so I think you should treat it separately.

20        But the question is, if you're going to raise either

21   jurisdictional or other dispositive issues, then let's do it

22   early on and let's resolve that.  Because I don't want this to

23   drift.

24        MR. SWANSON:  We have the same position, Your Honor.

25   We think that that should definitely be addressed before we get

PDF created with pdfFactory trial version www.pdffactory.com

12

# Exhibit 1

1    into what are obviously going to be administrative record type

2    issues.

3           THE COURT:  Well, you say it's obvious that it's

4    administrative record issues.  Mr. Gordon, I think --

5           MR. SWANSON:  I was discussing more the contention --

6           THE COURT:  Can Mr. Gordon get the answers to all of

7    the questions that he wants about the actual policies and

8    details of the investment of this fund with an administrative

9    record, or does he need more than that?

10           MR. SWANSON:  I believe so.  The administrative record

11    will include the specific investments that have occurred on this

12    judgment fund account, which has been around since the mid '90s,

13    so he's correct it doesn't have a lot of these historical

14    problems that some of the other accounts have, as well as a lot

15    of the written policies that are behind those documents.  And at

16    that time, as APA law holds, if the administrative record is

17    incomplete in some way, that is the time to attack that either

18    through supplementation or discovery.

19           THE COURT:  Well, how soon can you file your

20    administrative record and your motion, then?

21           MR. SWANSON:  The motion would be much sooner, Your

22    Honor.  We're thinking sometime this summer, in the next month

23    or so.

24           THE COURT:  This summer?

25           MR. SWANSON:  I guess it's not summer yet.

PDF created with pdfFactory trial version www.pdffactory.com

13

# Exhibit 1

1          THE COURT:  No, summer gives you too long.

2          MR. SWANSON:  We propose sometime in the next month,

3     Your Honor.

4          THE COURT:  Well, I thought the norm in an APA case was

5     to file your administrative record and your motion together.

6          MR. SWANSON:  I wasn't aware of that.  If that's your

7     preference, I wasn't aware of that as a norm.

8          THE COURT:  Well, does anybody know what the

9     administrative record is, or are you just going to collect a

10    bunch of documents and call it an administrative record and file

11    it?

12         MR. SWANSON:  They have not yet compiled the

13    administrative record, Your Honor, that's correct.

14         THE COURT:  And we're talking about the administrative

15    record of what?

16         MR. SWANSON:  Of the investments related to the band's

17    judgment fund account.

18         THE COURT:  Mr. Gordon, am I correct that the judgment

19    account of the Pechanga Band is basically all there is?  I mean,

20    you say in your memorandum this is their principal asset.  Do

21    they have any other assets, any regular income, any leases, any

22    grazing land, anything of that sort?

23         MR. GORDON:  Your Honor, based on the information the

24    government has provided to us, the judgment fund is by far and

25    away the largest.  The government has said that it is aware of a

PDF created with pdfFactory trial version www.pdffactory.com

14

# Exhibit 1

1    small account with less than $10,000 in it that's separate.

2         So I think in terms of the actual investments for the

3    tribe, it's going to be the investment of the judgment fund that

4    will cast sufficient light to show what's going on.

5         THE COURT:  Tell me about the Pechanga Tribe.  Luiseno

6    Mission Indians, California?

7         MR. GORDON:  Correct, Your Honor.

8         THE COURT:  How many members of the band, roughly,

9    ballpark?

10        MR. GORDON:  You know, Your Honor, I don't know.

11        MR. McHUGH:  Several thousand, I think.

12        THE COURT:  And do they benefit from the California --

13    this California fund that pays out to Indians?

14        MR. GORDON:  Well, the Pechanga, Your Honor, have a

15    very successful casino.  They've got very little in the way of

16    other resources, but they have turned out to be blessed by their

17    location.  They're in Southern California, they have a casino;

18    it's a successful casino.

19        THE COURT:  Uh-huh.  Okay.

20        MR. GORDON:  But they're not like other tribes where

21    there's a lot of oil and gas --

22        THE COURT:  A more efficient form of total return

23    investing, I should think.

24        MR. GORDON:  That may be, Your Honor.

25        THE COURT:  Yeah, okay.

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 1

1    MR. SWANSON:  Your Honor, I would just like to add that

2    as far as the motion to dismiss goes, we feel that that should

3    come before, again, the administrative record, just because that

4    would be a jurisdictional motion for the Court.

5    THE COURT:  I don't want this in two or three bites,

6    motion to dismiss denied, administrative record, motion for

7    summary judgment.  You know, it will be St. Swithen's Day before

8    we move on with this thing.  If you've got a motion summary

9    judgment and an administrative record, file the whole thing, do

10   it all at once.  Okay?

11   MR. SWANSON:  Then we would be talking --

12   THE COURT:  45 days?

13   MR. SWANSON:  Your Honor, the agency told us this

14   morning that we would probably need three or four months to

15   compile the administrative record.  Some of the documents are in

16   the air in Kansas, so we have to pull those, image, get

17   everything in electronic format to put before the Court and the

18   plaintiffs.  Which is part of our inclination for taking care of

19   the motion to dismiss in the interim.

20   THE COURT:  Well, if what you're going to pull together

21   as an administrative record is the full history of the

22   Pechanga's fund and how it was invested, how it was in fact

23   invested, and what policies governed that investment, then I

24   think you are responding to the discovery request that

25   Mr. Gordon made, and two or three months is not too much.

PDF created with pdfFactory trial version www.pdffactory.com

16

# Exhibit 1

1       But if what we get at the end of two or three months is

2   sort of a few pieces of paper, everybody is going to be upset,

3   including me.

4       MR. SWANSON:  Yes, Your Honor.

5       THE COURT:  Let's say the government has until

6   August 15th to file its administrative record and whatever

7   dispositive motions it wants to file.  Can you live with that,

8   Mr. Gordon?

9       MR. GORDON:  Your Honor, could I be heard for just a

10  moment, please?

11      THE COURT:  Yes.

12      MR. GORDON:  As I've said, our motion is forward

13  looking -- I'm sorry, not our motion.  Our claim is forward

14  looking here, and therefore, other than being of some limited

15  relevance, the way the funds were invested 15 years ago are not

16  very probative.

17      The government, for example, could walk in and say,

18  it's true, you know, we've done -- we've ignored total return

19  for the last 15 years, but as of today, or as of three months

20  ago, we put into place a new policy.  And given the claim that

21  we're making before this Court, it is where the government is

22  now that matters.

23      So I don't see the need to wait three months for the

24  government to go to Lenexa, Kansas to pull out all of the

25  15-year-ago records.  I would like to have them ultimately for

PDF created with pdfFactory trial version www.pdffactory.com

17

# Exhibit 1

 1   the suit in the Court of Federal Claims, but in terms of what

 2   this Court needs to focus on, I think that that's a bit of a red

 3   herring.

 4          The issue would be the records for the last four or

 5   five years, which should be very accessible and which we think

 6   we may already have from the government should be ample.  What

 7   we need beyond that is to know what the current policies and

 8   procedures are and what the current practices are.  And I think

 9   it would be of some relevance to establish not just for us but

10   across the board.  I mean, that's why we would like some

11   discovery, to establish that we're not unusual, that in fact the

12   practice and procedure is the same for everyone.

13          So I don't see the need to go to mid-August, frankly,

14   Your Honor.  We think this can be done on a much faster track

15   than that.

16          THE COURT:  Well, Mr. Gordon, the government -- it's a

17   huge government and there are lots of people in the government,

18   but most of the people in the government who are worried about

19   Indian trust matters are involved in one way or another with

20   Cobell issues that are coming to trial in June.  And they're

21   filing dispositive motions, as you know, in all of the tribal

22   issues.

23          And I learned a good deal about Lenexa in the course of

24   the first Cobell trial, and they may not exactly have an Open

25   America problem out there, but they can't just reach into the

PDF created with pdfFactory trial version www.pdffactory.com

18

# Exhibit 1

```
1    files and pull out whatever you want tomorrow from those Lenexa

2    files.

3              Mid-August sounds like a long time, but it's in my view

4    a realistic time.  It won't be extended.  You always have the

5    option, it seems to me, of filing your own pre-emptive cross

6    motion for preliminary injunction.  I don't know what you think

7    the chances of success of that motion are, but if you want to

8    try to bring matters to a head, you can try to do it.

9              I'm not prejudging that motion, but I don't see this as

10   an emergency.  I think you're raising an important issue that

11   ought to be raised, that needs to be discussed, but I don't

12   think we ought to be in any great rush to do it.  I think the

13   government may have until mid-August --

14             MR. GORDON:  Your Honor?

15             THE COURT:  Yes.

16             MR. GORDON:  We don't intend to proceed via preliminary

17   injunction.  I'll concede that right now.  We would like to do

18   it in an appropriate case.  If the Court's view is that August

19   will do that, then so be it.

20             THE COURT:  You can have until mid-August to file your

21   administrative record and whatever motion you want to file.

22   Mid-August will be defined as August 15th.

23             MR. SWANSON:  Thank you, Your Honor.

24             THE COURT:  And then, Mr. Gordon, you can respond as

25   fast as you want to respond.  You're the plaintiff; I'm not
```

PDF created with pdfFactory trial version www.pdffactory.com

19

# Exhibit 1

1    going to put a deadline on your response.  I'm sure you won't

2    need one.  You'll respond as quickly as you can.  Right?

3           MR. GORDON:  Yes, Your Honor.

4           THE COURT:  I think that deals with what we have to

5    deal with today.  Anything further?

6           MR. SWANSON:  I don't think so, Your Honor.

7           THE COURT:  All right.  Thank you, counsel.

8           (Proceedings adjourned at 11:40 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

20

# Exhibit 1

1                    **CERTIFICATE OF OFFICIAL COURT REPORTER**

2

3          **I, Rebecca Stonestreet, certify that the foregoing is a**

4    **correct transcript from the record of proceedings in the**

5    **above-entitled matter.**

6

7

8

9    _____          _____

10   **SIGNATURE OF COURT REPORTER**                    **DATE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| PECHANGA BAND OF | ) |
| LUISEÑO MISSION INDIANS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    Case No. 06-cv-02206-JR |
| | ) |
| DIRK KEMPTHORNE, | ) |
| Secretary of the Interior, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

_____)

## [PROPOSED] ORDER

Before the Court is Defendants' Motion to Dismiss Claims III and IV Or, In The

Alternative, For Summary Judgment.  Having considered Defendants' Motion and the parties'

memoranda in support and opposition thereto, it is hereby ORDERED that Defendants' Motion

to Dismiss is GRANTED and Counts III and IV of Plaintiffs' First Amended Complaint are

DISMISSED.

ENTERED this _____ day of _____, 2008

_____
JAMES ROBERTSON
United States District Judge