IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PECHANGA BAND OF LUISEÑO<br>MISSION INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE,<br>SECRETARY OF THE INTERIOR, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06cv02206-JR |

**PLAINTIFF'S MOTION TO VACATE
ORDER DISMISSING COUNTS III AND IV**

Plaintiff Pechanga Band of Luiseno Mission Indians ("Pechanga"), by counsel, respectfully moves the Court, pursuant to LCvR 7, to vacate its order of September 3, 2008, granting as conceded defendants' motion to dismiss counts III and IV of plaintiff's amended complaint. In support of this motion, Pechanga relies on the following points and authorities.

A status conference in this matter was conducted on May 22, 2008, to discuss counts III and IV. A transcript of that conference is attached. At that conference the Court gave defendants nearly three months, until August 15, 2008, to file an administrative record regarding counts III and IV and to file any dispositive motion. The Court did not set a deadline for a response to any such motion. Instead, the Court said:

> THE COURT:        And then, Mr. Gordon, you can respond as fast as you want to respond. You're the plaintiff; I'm not going to put a deadline on your response. I'm sure you won't need one. You'll respond as quickly as you can. Right?
>
> MR. GORDON:        Yes, Your Honor.

Tr. at 18-19.

Pursuant to the Court's directions, defendants filed an administrative record consisting of 1520 pages on August 15, 2008, together with a motion to dismiss claims III and IV or, in the alternative, for summary judgment. Since that time counsel for Pechanga has reviewed the administrative record, conferred with defendant's counsel about certain documents that have been withheld from the Administrative Record, and commenced drafting an opposition to defendants' motion. Pechanga intends to file that opposition as expeditiously as possible.

Because Pechanga has complied with this Court's directions, and has not failed to timely file an opposition to defendant's motion, Pechanga respectfully submits that the Court should vacate its order granting defendants' motion as conceded.

WHEREFORE, it is respectfully requested that this motion be granted and that the Court vacate its order of September 3, 2008, and reinstate counts III and IV of plaintiff's amended complaint.

A proposed order is submitted herewith.

Dated:  September 3, 2008

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:  /s/ Steven D. Gordon
       Steven D. Gordon
       District of Columbia Bar No. 219287
       Lynn E. Calkins
       District of Columbia Bar No. 445854
       Stephen J. McHugh
       District of Columbia Bar No. 485148
       Holland & Knight L.L.P.
       2099 Pennsylvania Ave. NW, Suite 100
       Washington, D.C. 20006
       202-955-3000 (phone)
       202-955-5564 (fax)

       *Counsel for Plaintiff Pechanga Band of*
       *Luiseno Mission Indians*

**CERTIFICATE OF SERVICE**

I hereby certify that on, September 3, 2008, I electronically transmitted the foregoing PLAINTIFF'S MOTION TO VACATE ORDER DISMISSING COUNTS III AND IV to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

/s/ Steven D. Gordon
Steven D. Gordon

# 5583483_v1

—1

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
PECHANGA BAND OF LUISENO          :     Civil Action No. 06-2206
MISSION INDIANS,                  :
                                  :
              Plaintiff           :
                                  :
v.                                :     May 22, 2008
                                  :
                                  :
DIRK KEMPTHORNE, et al.,          :     11:00 a.m.
                                  :
              Defendants          :
. . . . . . . . . . . . . . . . . :     . . . . . . . . . .
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          STEVEN D. GORDON, ESQUIRE
                                STEPHEN J. McHUGH, ESQUIRE
                                HOLLAND & KNIGHT LLP
                                2099 Pennsylvania Avenue, NW
                                Suite 100
                                Washington, DC 20006-6801
                                (202) 457-7038

For the Defendant:          KRISTOFOR SWANSON, ESQUIRE
                                ANTHONY P. HOANG, ESQUIRE
                                BARRY WEINER, ESQUIRE
                                United States Department
                                    of Justice
                                P.O. Box 663
                                Washington, DC 20044-0663
                                (202) 305-0241

Court Reporter:             REBECCA STONESTREET, RPR, CRR
                                Official Court Reporter
                                Room 6511, U.S. Courthouse
                                Washington, D.C. 20001
                                (202) 354-3249

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

PDF created with pdfFactory trial version www.pdffactory.com

2

Exhibit 1

1          **P R O C E E D I N G S**

2          COURTROOM DEPUTY:  This is Civil Action 06-2206,

3   Pechanga Band of Luiseno Mission Indians versus Dirk Kempthorne,

4   et al.  For the plaintiffs we have Steven Gordon and

5   Stephen McHugh; for the defendants we have Anthony Hoang, Barry

6   Weiner, Kristofor Swanson, and Josh Edelstein.

7          THE COURT:  The plaintiffs asked for a status

8   conference in this case, and my understanding of why we're here

9   is because the plaintiffs have filed counts of the amended

10  complaint which would distinguish this case from most of the

11  other tribal cases that are before me, because the plaintiffs

12  have added declaratory judgment counts asserting that the

13  defendants are in breach by failing to manage and invest so as

14  to maximize the total return.

15         The management and investment issues in Cobell, which

16  has been more or less the lodestar of all of these cases, were

17  run to the sidelines a long time ago, and have not been part of

18  the active litigation of the Cobell case.  And I'm not quite

19  sure exactly what the plaintiff has in mind here, or how we

20  should proceed with these two additional counts.

21         So I think maybe I should hear first from Mr. Gordon,

22  and then let's hear what the government has to say about it.

23         MR. GORDON:  Good morning, Your Honor.

24         THE COURT:  Good morning.

25         MR. GORDON:  I believe the Court has accurately

PDF created with pdfFactory trial version www.pdffactory.com

3

# Exhibit 1

1   summarized what we have.  We basically have two distinct matters

2   in the same case, and our focus here today is on the new counts,

3   counts three and four, that were added when we filed the amended

4   complaint in February.

5           So far as we know, this is the first case to raise this

6   issue about the government's failure to pursue total return

7   investing, and this is an issue, as the Court has noted, that is

8   completely distinct from the basic Cobell type accounting issues

9   that the Court has been wrestling with.  And those issues, of

10  course, are going to take a fair amount of time to resolve,

11  under the best of circumstances.

12          This is a very discrete issue.  This is not an issue

13  that should take years to resolve, this is an issue that we

14  believe can fairly be resolved in months.  We think that because

15  of the nature of the case, where we are challenging the policies

16  and practices of the government and basically their failure to

17  employ a total return approach, that this is agency action

18  withheld under the construct of the Administrative Procedure

19  Act.

20          And we don't believe that this is a case that therefore

21  can be resolved on the basis simply of some sort of

22  administrative record that the government puts together.  The

23  government, of course, is free to file an administrative record,

24  and I think it will be the case that there will be documents in

25  terms of the government's investment policies and procedures

PDF created with pdfFactory trial version www.pdffactory.com

4

### Exhibit 1

1    that are highly relevant and that will largely inform the

2    Court's resolution.

3         But we believe that in order to accurately and properly

4    prepare this case for the Court and for a resolution, we'll need

5    some discovery, and that we anticipate that ultimately that the

6    Court would probably want to conduct a hearing or a minitrial of

7    some sort, along perhaps the lines of what it did in Cobell, so

8    that it can be confident that it has its arms around exactly

9    what the government is doing, what our complaint about it is,

10   and therefore the Court can make an informed ruling about

11   whether that complies with the government's obligations.

12        So in terms of what we would like today, we would like

13   basically to set a discovery schedule so that we can move the

14   case along, Your Honor.

15        THE COURT:  What kind of discovery do you want?  I

16   mean, your theory is they've doubled the money in 15 years, they

17   should have expanded it by a factor of 10 or 12 or something

18   like that, but what discovery do you need?

19        MR. GORDON:  Well, Your Honor, we need to have the

20   documents, all of the policy documents about what their current

21   investment policy is.  We have certain documents, we alleged

22   those in the complaints; in their answer the government said,

23   well, that's not all.  There's more.  We asked for that by

24   letter two months ago.  The government has not yet produced it.

25        THE COURT:  You might have gotten it faster using FOIA.

PDF created with pdfFactory trial version www.pdffactory.com

5

## Exhibit 1

1          MR. GORDON:  Perhaps, Your Honor.  But beyond what

2     their policy is, in order to get at what their practices are,

3     their day-to-day practices are, we think we're going to need to

4     take a couple of depositions.  I don't think we're going to need

5     to take a bunch of depositions, but if they produce the

6     knowledgeable people, we could have some depositions that will

7     establish the baseline of what their day-to-day practices are in

8     terms of how they invest and in terms of how they implement the

9     policies that they have on paper.

10          And that's the sort of discovery we think we need in

11     this case, is to get the documents, to have several depositions,

12     and then to tee this up for the Court.

13          THE COURT:  Now, you're involved in a difficult

14     two-court straddle here, Mr. Gordon.  You have the Court of

15     Federal Claims; your theory is that you get a declaration here

16     and damages over there and so forth.  I'm sure I'm going to hear

17     from the government about some jurisdictional issues here, but

18     what's your overall view of the jurisdictional posture?

19          MR. GORDON:  I'm happy to address that, Your Honor.

20          First of all, our client, the Pechanga Band, has not

21     filed as of yet any suit in the Court of Federal Claims.  Let me

22     be perfectly candid, though, that it is our intention eventually

23     to file such a suit.

24          So I don't want to be -- I don't want to be cute about

25     that, but as the Court well knows, the Court of Federal Claims

PDF created with pdfFactory trial version www.pdffactory.com

6

## Exhibit 1

1    has a limited jurisdiction and has the ability to grant us

2    damages, but it does not have the equitable powers that this

3    Court has.

4         And the problem is not simply that for the past almost

5    15 years that the tribe's judgment fund has been inadequately

6    invested, it's a matter that it's still being inadequately

7    invested as we appear here today, and will be for the

8    foreseeable future, unless and until the government makes a

9    fundamental change in how it approaches its investment

10   responsibility for Indian tribes.

11        And in order to address that on a forward-looking

12   basis, you know, I can't go into the Court of Federal Claims and

13   get any relief on that.  They'll say, we'll be happy to talk

14   about damages for the last 15 years, and then if you've got more

15   damages, I suppose we could keep coming back to them every

16   often.  But that's obviously a very inefficient way of

17   approaching it.

18        THE COURT:  You don't think the government would have

19   an appropriate Pavlovian reaction if they got a damage award?

20        MR. GORDON:  Your Honor, I'm not confident of that.

21   But the other problem is this:  In order to litigate in the

22   Court of Federal Claims, when you start going back a number of

23   years -- and the time frame here is actually not bad in terms of

24   Indian breach of trust cases.  I've got others that go back 30,

25   40, 50 years.  But in order to push those through in the Court

PDF created with pdfFactory trial version www.pdffactory.com

7

## Exhibit 1

1    of Federal Claims, it's going to take quite a bit of time.  And

2    then obviously the government can appeal, and meanwhile, nothing

3    is happening in terms of them stepping up to the plate and doing

4    total return investing.

5            The government has systematically engaged for

6    30 years -- I mean, the only way the government has known how to

7    invest funds for Indians is to make an investment and sit there

8    and clip the coupons, and when the investment matures, they roll

9    it over.  They have never, so far as we know, based on all of

10   the study we've done, employed a total return approach.  They've

11   been given advice about doing that back in the 1980's.  I think

12   we put that into the complaint.  They had Price Waterhouse come

13   in, and it made some suggestions that were never implemented.

14           So this is not, if you will --

15   THE COURT:  Talk to me about this total return

16   approach.  I mean, the government does not operate like your

17   investment advisor does in anything it does.  If it did, we

18   wouldn't have a national deficit, I don't think.

19           What is your real bottom line here, that they ought to

20   be outsourcing this to Lehman Brothers or something?

21   MR. GORDON:  Well, Your Honor, how exactly they carry

22   that out at some point is not for me to say, or I suppose

23   there's a limit even for the Court.  The Court has addressed

24   that issue I think in Cobell, to some extent.  I mean, there are

25   certain parameters that the Court sets, and then it's going to

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 1

1    be up to the government to decide exactly how it does it.

2            I understand full well that the Court is not going to

3    give detailed instructions about how the government should

4    engage in total return investing.

5            THE COURT:  Well, what do you think?  I mean, should

6    they be doing it the way the President wants the Social Security

7    Administration to be done, give the tribe the ability to direct

8    their own investment, like an IRA or something?

9            MR. GORDON:  Well, that was one of the suggestions

10   Price Waterhouse made back in the '80s, was that basically they

11   ought to set up three different funds, sort of a short-term,

12   medium term, and long-term funds, give the tribes a choice of

13   how they would like their funds invested, and proceed from

14   there.

15           Price Waterhouse also suggested that in terms of

16   dealing with the market, because now we're talking about market

17   fluctuations during the course of an investment, they would need

18   to get some professional advice.  And Price Waterhouse didn't

19   suggest that that would be done in-house, that the Bureau of

20   Indian Affairs would somehow make itself a Wall Street giant,

21   they suggested that that be outsourced and that they get some

22   advice.

23           And in fact, the BIA proposed at one point, in fact,

24   they let a contract that I believe went to Security Pacific

25   Bank - this was in the late '80s - where Security Pacific Bank

PDF created with pdfFactory trial version www.pdffactory.com

## Exhibit 1

1    was going to assist on investing the tribal trust funds.  That

2    didn't come to fruition.

3              And the story on that, to make a long story short, was

4    Congress said, you know, before you start outsourcing -- this

5    was obviously during the Reagan Administration that believed in

6    privatizing a lot of things.  Congress stepped in and said, you

7    know, before you start outsourcing some of this, the tribes need

8    an accounting to make sure that the funds that they've got are

9    everything they should have.

10              And so the focus shifted to accounting, and it wasn't

11    too long before Ms. Cobell came along, and you've had, this

12    Court knows better than I, what's happened since.

13              But meanwhile, in 1994 you have the Trust Fund Reform

14    Act that's passed by Congress, which actually predates Cobell,

15    and Congress said specifically by statute that the way that the

16    Department of the Interior and the Bureau of Indian Affairs

17    manages trust fund monies needs to be designed to maximize

18    return.

19              And two years earlier, in 1992, the restatement of

20    trusts, which is the black letter law in the area, had made the

21    point that trustees have to pay attention to total return in

22    terms of fulfilling their fiduciary duty.  It's not simply

23    sufficient to look to income, you've got to look to total

24    return.

25              That's been simply ignored or given lip service, in our

PDF created with pdfFactory trial version www.pdffactory.com

## Exhibit 1

1   view, by the government, and we think that that's what some

2   discovery will show.  It's not a big secret.  Once you establish

3   what the policies are and what the actual practices are, it's

4   going to be pretty glaring, we think.

5           And then the Court will have the decision about does

6   this comply, does this fulfill the government's fiduciary

7   obligation.  And if it doesn't, then I assume the Court will

8   say, you know, you've got to come up with a way to implement

9   total return investment.

10          And you have various options, and it's not for the

11  Court to micromanage, but it is for the Court to say that you

12  have to do it one way or another.  That's our view of the case,

13  Your Honor.

14          THE COURT:  All right.  Thank you, Mr. Gordon.  Who's

15  up for the government?

16          MR. SWANSON:  Christopher Swanson, Your Honor, for the

17  United States.

18          A few comments.  First regarding the administrative

19  record, it is our position that this is a case filed under the

20  APA, and should therefore be judged on administrative record.

21  The complaint is phrased in terms of withholding an agency

22  action, but I find that a little odd because Interior here is

23  investing the tribe's money; the complaint is more that they're

24  investing it incorrectly.  In my mind, that's a traditional APA

25  type of case with a record that would include those investments

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 1

1    and the policies that are behind them.

2            You are correct in that we are contemplating motions to

3    dismiss on all the tribes' claims.  Those first two are ones

4    that more closely align with the other tribes that are currently

5    being briefed for motions to dismiss, but we are also

6    contemplating motions to dismiss on jurisdictional grounds for

7    these latter two claims as well.

8            THE COURT:  Well, what does "contemplate" mean?  How

9    long are you going to contemplate them before you file them?

10           MR. SWANSON:  Well, we were actually hoping that some

11   of that scheduling might be taken care of today, Your Honor.

12   And it might be up to your preference of whether that is

13   something, given that this is the only tribe that has --

14           THE COURT:  I think it's a separate issue from the

15   issue that I've invited these omnibus motions on.

16           MR. SWANSON:  That was our impression as well,

17   Your Honor.

18           THE COURT:  And it's separate and it's rather

19   distinctive, I think, so I think you should treat it separately.

20           But the question is, if you're going to raise either

21   jurisdictional or other dispositive issues, then let's do it

22   early on and let's resolve that.  Because I don't want this to

23   drift.

24           MR. SWANSON:  We have the same position, Your Honor.

25   We think that that should definitely be addressed before we get

—12

# Exhibit 1

1   into what are obviously going to be administrative record type

2   issues.

3           THE COURT:  Well, you say it's obvious that it's

4   administrative record issues.  Mr. Gordon, I think --

5           MR. SWANSON:  I was discussing more the contention --

6           THE COURT:  Can Mr. Gordon get the answers to all of

7   the questions that he wants about the actual policies and

8   details of the investment of this fund with an administrative

9   record, or does he need more than that?

10          MR. SWANSON:  I believe so.  The administrative record

11  will include the specific investments that have occurred on this

12  judgment fund account, which has been around since the mid '90s,

13  so he's correct it doesn't have a lot of these historical

14  problems that some of the other accounts have, as well as a lot

15  of the written policies that are behind those documents.  And at

16  that time, as APA law holds, if the administrative record is

17  incomplete in some way, that is the time to attack that either

18  through supplementation or discovery.

19          THE COURT:  Well, how soon can you file your

20  administrative record and your motion, then?

21          MR. SWANSON:  The motion would be much sooner, Your

22  Honor.  We're thinking sometime this summer, in the next month

23  or so.

24          THE COURT:  This summer?

25          MR. SWANSON:  I guess it's not summer yet.

PDF created with pdfFactory trial version www.pdffactory.com

—13

# Exhibit 1

1           THE COURT:  No, summer gives you too long.

2           MR. SWANSON:  We propose sometime in the next month,

3    Your Honor.

4           THE COURT:  Well, I thought the norm in an APA case was

5    to file your administrative record and your motion together.

6           MR. SWANSON:  I wasn't aware of that.  If that's your

7    preference, I wasn't aware of that as a norm.

8           THE COURT:  Well, does anybody know what the

9    administrative record is, or are you just going to collect a

10   bunch of documents and call it an administrative record and file

11   it?

12          MR. SWANSON:  They have not yet compiled the

13   administrative record, Your Honor, that's correct.

14          THE COURT:  And we're talking about the administrative

15   record of what?

16          MR. SWANSON:  Of the investments related to the band's

17   judgment fund account.

18          THE COURT:  Mr. Gordon, am I correct that the judgment

19   account of the Pechanga Band is basically all there is?  I mean,

20   you say in your memorandum this is their principal asset.  Do

21   they have any other assets, any regular income, any leases, any

22   grazing land, anything of that sort?

23          MR. GORDON:  Your Honor, based on the information the

24   government has provided to us, the judgment fund is by far and

25   away the largest.  The government has said that it is aware of a

PDF created with pdfFactory trial version www.pdffactory.com

—14

**Exhibit 1**

1    small account with less than $10,000 in it that's separate.

2         So I think in terms of the actual investments for the

3    tribe, it's going to be the investment of the judgment fund that

4    will cast sufficient light to show what's going on.

5         THE COURT:  Tell me about the Pechanga Tribe.  Luiseno

6    Mission Indians, California?

7         MR. GORDON:  Correct, Your Honor.

8         THE COURT:  How many members of the band, roughly,

9    ballpark?

10        MR. GORDON:  You know, Your Honor, I don't know.

11        MR. McHUGH:  Several thousand, I think.

12        THE COURT:  And do they benefit from the California --

13   this California fund that pays out to Indians?

14        MR. GORDON:  Well, the Pechanga, Your Honor, have a

15   very successful casino.  They've got very little in the way of

16   other resources, but they have turned out to be blessed by their

17   location.  They're in Southern California, they have a casino;

18   it's a successful casino.

19        THE COURT:  Uh-huh.  Okay.

20        MR. GORDON:  But they're not like other tribes where

21   there's a lot of oil and gas --

22        THE COURT:  A more efficient form of total return

23   investing, I should think.

24        MR. GORDON:  That may be, Your Honor.

25        THE COURT:  Yeah, okay.

PDF created with pdfFactory trial version www.pdffactory.com

—15

# Exhibit 1

1      MR. SWANSON:  Your Honor, I would just like to add that

2  as far as the motion to dismiss goes, we feel that that should

3  come before, again, the administrative record, just because that

4  would be a jurisdictional motion for the Court.

5      THE COURT:  I don't want this in two or three bites,

6  motion to dismiss denied, administrative record, motion for

7  summary judgment.  You know, it will be St. Swithen's Day before

8  we move on with this thing.  If you've got a motion summary

9  judgment and an administrative record, file the whole thing, do

10  it all at once.  Okay?

11      MR. SWANSON:  Then we would be talking --

12      THE COURT:  45 days?

13      MR. SWANSON:  Your Honor, the agency told us this

14  morning that we would probably need three or four months to

15  compile the administrative record.  Some of the documents are in

16  the air in Kansas, so we have to pull those, image, get

17  everything in electronic format to put before the Court and the

18  plaintiffs.  Which is part of our inclination for taking care of

19  the motion to dismiss in the interim.

20      THE COURT:  Well, if what you're going to pull together

21  as an administrative record is the full history of the

22  Pechanga's fund and how it was invested, how it was in fact

23  invested, and what policies governed that investment, then I

24  think you are responding to the discovery request that

25  Mr. Gordon made, and two or three months is not too much.

PDF created with pdfFactory trial version www.pdffactory.com

-16

# Exhibit 1

1          But if what we get at the end of two or three months is

2   sort of a few pieces of paper, everybody is going to be upset,

3   including me.

4          MR. SWANSON:  Yes, Your Honor.

5          THE COURT:  Let's say the government has until

6   August 15th to file its administrative record and whatever

7   dispositive motions it wants to file.  Can you live with that,

8   Mr. Gordon?

9          MR. GORDON:  Your Honor, could I be heard for just a

10  moment, please?

11          THE COURT:  Yes.

12          MR. GORDON:  As I've said, our motion is forward

13  looking -- I'm sorry, not our motion.  Our claim is forward

14  looking here, and therefore, other than being of some limited

15  relevance, the way the funds were invested 15 years ago are not

16  very probative.

17          The government, for example, could walk in and say,

18  it's true, you know, we've done -- we've ignored total return

19  for the last 15 years, but as of today, or as of three months

20  ago, we put into place a new policy.  And given the claim that

21  we're making before this Court, it is where the government is

22  now that matters.

23          So I don't see the need to wait three months for the

24  government to go to Lenexa, Kansas to pull out all of the

25  15-year-ago records.  I would like to have them ultimately for

PDF created with pdfFactory trial version www.pdffactory.com

17

## Exhibit 1

1   the suit in the Court of Federal Claims, but in terms of what

2   this Court needs to focus on, I think that that's a bit of a red

3   herring.

4         The issue would be the records for the last four or

5   five years, which should be very accessible and which we think

6   we may already have from the government should be ample.  What

7   we need beyond that is to know what the current policies and

8   procedures are and what the current practices are.  And I think

9   it would be of some relevance to establish not just for us but

10   across the board.  I mean, that's why we would like some

11   discovery, to establish that we're not unusual, that in fact the

12   practice and procedure is the same for everyone.

13         So I don't see the need to go to mid-August, frankly,

14   Your Honor.  We think this can be done on a much faster track

15   than that.

16         THE COURT:  Well, Mr. Gordon, the government -- it's a

17   huge government and there are lots of people in the government,

18   but most of the people in the government who are worried about

19   Indian trust matters are involved in one way or another with

20   Cobell issues that are coming to trial in June.  And they're

21   filing dispositive motions, as you know, in all of the tribal

22   issues.

23         And I learned a good deal about Lenexa in the course of

24   the first Cobell trial, and they may not exactly have an Open

25   America problem out there, but they can't just reach into the

PDF created with pdfFactory trial version www.pdffactory.com

## Exhibit 1

1    files and pull out whatever you want tomorrow from those Lenexa

2    files.

3         Mid-August sounds like a long time, but it's in my view

4    a realistic time.  It won't be extended.  You always have the

5    option, it seems to me, of filing your own pre-emptive cross

6    motion for preliminary injunction.  I don't know what you think

7    the chances of success of that motion are, but if you want to

8    try to bring matters to a head, you can try to do it.

9         I'm not prejudging that motion, but I don't see this as

10   an emergency.  I think you're raising an important issue that

11   ought to be raised, that needs to be discussed, but I don't

12   think we ought to be in any great rush to do it.  I think the

13   government may have until mid-August --

14        MR. GORDON:  Your Honor?

15        THE COURT:  Yes.

16        MR. GORDON:  We don't intend to proceed via preliminary

17   injunction.  I'll concede that right now.  We would like to do

18   it in an appropriate case.  If the Court's view is that August

19   will do that, then so be it.

20        THE COURT:  You can have until mid-August to file your

21   administrative record and whatever motion you want to file.

22   Mid-August will be defined as August 15th.

23        MR. SWANSON:  Thank you, Your Honor.

24        THE COURT:  And then, Mr. Gordon, you can respond as

25   fast as you want to respond.  You're the plaintiff; I'm not

PDF created with pdfFactory trial version www.pdffactory.com

—19

### Exhibit 1

1    going to put a deadline on your response.  I'm sure you won't

2    need one.  You'll respond as quickly as you can.  Right?

3        MR. GORDON:  Yes, Your Honor.

4        THE COURT:  I think that deals with what we have to

5    deal with today.  Anything further?

6        MR. SWANSON:  I don't think so, Your Honor.

7        THE COURT:  All right.  Thank you, counsel.

8        (Proceedings adjourned at 11:40 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

20

Exhibit 1

1    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3         I, Rebecca Stonestreet, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    _____              _____

10   SIGNATURE OF COURT REPORTER                DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Rebecca Stonestreet*        *(202) 354-3249*        *kingreporter2@verizon.net*

PDF created with pdfFactory trial version www.pdffactory.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PECHANGA BAND OF LUISEÑO           )
MISSION INDIANS,                   )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     Case No. 06cv02206-JR
                                   )
DIRK KEMPTHORNE,                   )
SECRETARY OF THE INTERIOR, et al.  )
                                   )
          Defendants.              )
_____)

## ORDER REINSTATING COUNTS III AND IV

The Court has considered plaintiff's motion to vacate its order of September 3, 2008,

granting as conceded defendants' motion to dismiss counts III and IV of plaintiff's amended

complaint.  Being fully apprised of the premises, the Court hereby

ORDERS that plaintiff's motion is granted and counts III and IV of the amended

complaint are hereby reinstated.


                                   _____
                                   JAMES ROBERTSON
                                   UNITED STATES DISTRICT JUDGE


# 5583520_v1